————o————

THOMAS LEWIS, Appellant, *vs.* THE ATLAS MUTUAL LIFE INSURANCE COMPANY, Respondent.

1. *Contracts—Corporation, inability of to continue in business no excuse for breach of contract with agent—Mutuality of agreements.*—The inability of a corporation to continue in business is no excuse for its breach of contract with an agent; and where he agrees to act exclusively for it for a specified period, the fact that the company did not in terms agree to continue the contract for the whole of that time, will not authorize a discontinuance in the meantime on its part.

2. *Contracts—Obligations expressed—Corresponding ones implied.*—Although a contract in its terms is obligatory on one party only, yet if the intention of the parties, and the consideration upon which the obligation is assumed, is, that there shall be a correlative obligation on the other side, the law will imply it.

3. *Contracts—Insurance agent—Measure of damages—Renewals—Past earnings—Earnings elsewhere.*—In suit by an agent against an insurance company for damages resulting from his discharge during the term of his engagement, his measure of damages is the amount he has lost in consequence. And the testimony of actuaries as to the probable value of renewals for the remainder of his term, on policies already obtained, is competent in arriving at the result. But an estimate of his probable earnings thereafter, derived from proof of the amount of his collections and commissions before the breach, without other proof relating thereto, would be too speculative to be admissible. In such suit, defendant may show in mitigation of the damages, that plaintiff was employed elsewhere after the breach, and the amount of compensation received by him while so engaged.

*Appeal from St. Louis County Circuit Court.*

*Martin & Lackland*, for Appellant.

I. There was a legal obligation on the part of the Atlas Life Insurance Company, to fulfill its contract for the term of five years—that is, to employ and keep the appellant in their employment for that period of time. This is the legal implication of the contract, although not expressed.

II. Neither inability or insolvency constitute a legal excuse for the non-performance of a contract. The legal obligation continues notwithstanding inability to perform. (Pothier Oblig., 133 ; 2 Par. Con., 672 ; Huling vs. Craig, Addison R., 342 ; Paradine vs. Jane, Aleyn, 26 : Worsley vs. Wood, 6 T. R., 718 ; Hibbelwaite vs. Main, 5 Mes. & W., 462 ; Tufnell vs. Constable, 7 Ad. & E., 798 ; Booth vs. Spuytin, 3 Thomp. & Co., N. Y. S. Ct., 368 ; Harmony vs. Bingham, 12 N. Y., 99 ; Tompkins vs. Dudley, 25 N. Y., 272 ; Worth vs. Edmunds, 52 Barb., 40 ; White vs. Main, 26 Me., 361 ; Niblo vs. Binose, 44 Barb., 54.)

III. There is an implied obligation on the part of all parties to contracts that they will perform what they undertake. States are not at liberty to impair this. (McCracken vs. Hayward. 2 How., [U. S.] 612 ; Curran vs. Ark, 15 How.. [U. S.] 304 ; Walker vs. Whitehead, 16 Wall.. 314 ; Sedg. Stat. & Const. Law, 603, n. a. [2d. Ed.] ; Metc. Contr.. 317.)

IV. Whenever the undertaking requires pecuniary means for its performance, there is an implied obligation of solvency and sufficiency of means. This is only a part of the obligation to perform, and is implied in it.

V. Insolvency and inability not being a defense or excuse for non-performance, they are equally inadmissible in mitigation of damages. To permit these facts in mitigation of damages, would be equivalent to allowing them as a defense. They would amount to a defense if permitted in mitigation.

VI. Insolvency so far from being a defense on a contract, is in itself the legal breach of a contract requiring pecuniary means for performance. It breaks up the contract of factorage. (Sto. Agency, § 486.) It is a ground for arresting delivery of goods sold. (Story Sales, § 318.)

VII. In an action against a notary for failure to protest, he is at liberty to show insolvency of the indorser in mitigation. (Sudan vs. Allen, 20 Wend., 321.)

In trover for conversion of paper negotiable, the defendant can show the insolvency of the maker. (Sedg. Meas. Dam., 488; Menkins vs. Menkins, 23 Mo., 252; Bredow vs. M. S. I.. 28 Mo., 181.) But in these cases the suit was not against the maker of the obligation. He can never show insolvency of himself as an excuse or defense.

VIII. The method of reaching the value of renewals by the calculations of actuaries is too well established to admit of question. (Ensworth vs. N. Y. Life Ins., 7 Am. L. Reg., 332; S. C., 1 Bigelow, 645; Stagg vs. Conn. Mut., 1 Ins. L. J., 9; Griffin vs. Calvis, 16 N. Y., 489; Newburg vs. Walker, 8 Gratt., 16; Rhodes vs. Baird, 16 Ohio, 573.)

*Cline, Jamison & Day*, for Respondent.

WAGNER, Judge, delivered the opinion of the court.

This was an action to recover damages for breach of a contract of agency. By virtue of the contract the plaintiff became the general agent of the defendant for the State of Illinois, for the term of five years. By the provisions of the contract the plaintiff agreed to work exclusively for the company during its continuance. He was also bound to work the territory with a full corps of energetic and reliable agents. He had all the authority of a general agent in soliciting insurance and collecting premiums. His remittances were to be on the 10th of each month, at the time of his monthly reports. As a compensation for his services and expenditures, he was to have 35 per cent. on first premiums, prior to July 1st, 1870, and 30 per cent. after that, ten per cent. on term insurance and paid up policies, and ten per cent. on all renewals. These premiums on renewals were to be paid to him and his heirs after the expiration of the five years, provided he continued to be the agent of the company for that term, and performed the conditions of the contract required of him. He was also to have $250 per year, for rent of office at Spring-

field, Illinois. It is averred in the petition that the plaintiff discharged the duties of the contract devolving upon him, until the 2d day of March, 1872, at which time the defendant discontinued its business in Iilinois, and failed and refused to permit plaintiff to further prosecute the duties as agent there; that on the 24th of April, 1872, the defendant voluntarily sold and transferred the whole of its business and its assets to the St. Louis Mutual Life Insurance Company, thereby discontinuing its business and depriving itself of the power to keep and perform its part of the contract.

The answer denies the breaches, and also sets out, as an excuse for the discontinuance of its business in Illinois and elsewhere, that on account of the insufficiency of its assets and property, it was unable to comply with the laws of Illinois and Missouri, and that on the 24th of April, 1872, it caused all its policies to be re-insured in the St. Louis Mutual Life Insurance Company, and that the plaintiff sanctioned the re-insurance. The evidence showed conclusively, and about that there is no question, that the defendant discontinued its business in Illinois on the 2d of March, 1872, and that it sold out entirely to the St. Louis Mutual Life Insurance Company on the 24th of April, 1872.

It was an unqualified sale of all its property and rights. The cause was tried before the circuit court with a jury, and a verdict was found for the plaintiff, upon which judgment was rendered. At general term this judgment was reversed, and plaintiff prosecuted his appeal to this court.

There are but two questions arising on the record of any importance, and the first is, whether the insolvency and inability of the company to carry on its business, is any legal excuse for the breaches of the contract; and the second relates to the measure of damages. The court held, by its instructions, that the inability of the defendant to continue its business, was no excuse for its breach of contract with the plaintiff.

It appeared at the trial that the plaintiff was only permitted to conduct his agency about half the time agreed upon by the stipulation. During that time he procured a large number

of policies and the annual renewals were shown to be very valuable.

It is now argued on behalf of the defendant, that by the terms of the contract sued on, the plaintiff was merely appointed agent for the company, for the period of five years, and, as the company did not expressly bind itself to continue in business for that length of time, that its inability to act and execute the whole stipulation on its part, constituted no breach.    It is true, there was no positive and direct covenant on the part of the company to carry on the business for any definite time.    But the plaintiff agreed to act exclusively for the company for the term of five years, and had he neglected or failed, he would have been liable in damages.    If he was bound for that length of time, it necessarily follows that the company must also have been bound ; for mutuality was essential to the validity of the agreement.

It very frequently happens that contracts on their face and by their express terms appear to be obligatory on one party only ; but in such cases, if it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied. As, if the act to be done by the party binding himself can only be done upon a corresponding act being done or allowed by the other party, an obligation by the latter to do or allow to be done the act or things necessary for the completion of the contract, will be necessarily implied.    (Pordage vs. Cole, 1 Wm. Saund, 319 ; Churchward vs. The Queen, 6 B. & S., 807; Black vs. Woodrow, 39 Md., 194.)    When the plaintiff bound himself to give his exclusive services to the defendant for the period of five years, there was a correlative and corresponding obligation upon the part of the defendant, to give him employment and allow him to pursue and execute the terms of the contract.    This was manifestly the intention of the parties.    The defendant's insolvency or inability furnished no excuse for its breach of the contract.    Had it desired to

be exempted from liability in such an event, it should have stipulated for the exemption upon the happening of the contingency.

The criterion of damages would be to ascertain how much the plaintiff has lost by the defendant's breach of the contract. Upon the trial it was shown how much he had realized during the existence of the contract, and the estimate in the verdict seems to have been placed upon the past actual earnings, together with the testimony of actuaries, as to what probably would be the value of the renewals on policies already obtained. A custom or usage has sprung up and exists with insurance companies, by which adjustments are made as to the value and renewals of policies, for any given length of time. By the use of statistical tables and comparisons, a remarkable degree of accuracy is obtained, and where a connection ceases between an agent and the company, it is the only mode of ascertaining or adjusting the agent's interest. The calculation by the actuary has been reduced to scientific principles, and it must be resorted to, else there would be a failure of justice on one hand, or on the other, the damages would be purely speculative.

In Ensworth vs. The New York Life Ins. Co.. (7 Am. Law Reg. [N. S.] 332 ; S. C.. 1 Bigel. Ins. Cas., 645) an action was brought against an insurance company by the agent for breach of contract, whereby the company agreed to give the agent a certain percentage on renewals of policies while they continued in force. It was held that the action was sustainable, and that the probable duration of the policies might be proved ; and a judgment was given for the full value of the commissions on the renewal premiums to become due, during their estimated probable life time, after deducting the costs of collection.

The plaintiff was permitted to show the amount of his collections from time to time, from July 1st, 1869, to March 1st 1872, and the amount of his commissions during that time, both in the aggregate and per month on the average. These commissions were all paid, and it is evident from the amount

of the verdict, that the jury must have considered the commission on premiums for the above named period as a fair criterion of what plaintiff would have earned in the future, had the contract not been broken. Without some other evidence of the probable amount of the business, these damages would be too much of a speculative character. The new business might depend on various circumstances and be affected by numerous contingencies, and these should be shown as entering into the computation of damages.

The court refused to allow the defendant to show that the plaintiff had made a contract with another insurance company. and had entered into its service, shortly after he ceased to be agent for the defendant. It was competent for the plaintiff to recover what he had lost by reason of the breach of the contract, for the residue of the term of his agency, but the defendant should have been allowed to show in mitigation of damages, what he was making in another company during the remainder of the time covered by the contract.

For this reason we affirm the judgment. Judges Napton and Sherwood concur. Judges Vories and Hough absent.