## WILLIAM C. SHAW v. WOODBURY GLASS WORKS.

1. To constitute a contract, all the essential terms must be settled and assented to by both the parties.
2. Where an agent of a glass manufactory told a workman that he should have a place in the works the ensuing season, and it appearing that there were different places for the workmen, some more valuable than others, and that it was customary for the company, before each season, to fix the prices to be paid to their employes—*Held*, that there was no contract completed, as neither the price of the labor nor the place to be given to plaintiff was agreed upon.

On motion for a new trial.

Argued at June Term, 1889, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and SCUDDER.

For the plaintiff, *John W. Wescott.*

For the defendant, *Thomas E. French.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The ground of complaint laid in the declaration in this case is, that the defendant hired the plaintiff to work in its factory for the period of one fire, extending from the 1st day of September, 1887, to the 1st day of July, 1888, and agreed to pay the plaintiff such wages as he might earn in said employment, and that the defendant, without any cause, and although the plaintiff was at all times ready and willing to carry out his part of said agreement, wrongfully refused to allow the said plaintiff to work in the factory for the period just mentioned.

In order to sustain his case at the trial, the plaintiff was bound to prove in substance the agreement thus stated, and in this, in the opinion of this court, he altogether failed. Waiving altogether the testimony on the part of the defence, and accepting the evidence on the plaintiff's side in its unqualified force, we think a contract of hiring was not shown.

The plaintiff relied mainly on his own testimony for the proof of his bargain, and his account of the transaction was in these words, viz.:

"*A.* On the 6th of August, 1887, Thomas Biggs and I went from Millville to Woodbury to see about work for the next season; we went in the office at Woodbury—that was in the forenoon of the 6th of August—and I said, 'Mr. Duffield, I understand you are hiring your men.' He said, 'Yes.' I said, 'How about it; will you have a place for me?' And he said, 'Yes, I will have a place for you, but I can't say whether I can arrange you in the first house or not, we have so many of the stockholders and old apprentices; I have to arrange them in first, but when we start the second house you shall have the place.' I said, 'Probably I will have to wait too long until the second house starts.' He said, 'I don't think it will be over two or three weeks from the time the first house starts until the second one.' I said, 'All right, then I will wait.'"

Subsequently he replied to interrogatories as follows, viz.:

"*Q.* How much could you have earned per month at the Woodbury Glass Works?

"*A.* If I had any kind of a place I might have made $122 a month, if I had any kind of a place.

"*Q.* What do you mean by that?

"*A.* A pretty fair place; an average place.

"*Q.* Explain what you mean?

"*A.* There are some places that you can make a great deal more in than in others—a place to work.

"*Q.* What kind of a place?

"*A.* Generally three men work together in a shop; there is two moulds and one finisher; I work at finishing; if I have any kind of shop to work with, I could make $125 a month.

"*Q.* Do I understand you to mean that different mechanics, working at the same furnace, make different sums of money?

"*A.* Yes, sir; different kinds of work to work on; take an average place to work at Woodbury, it will run $125; he did not say what kind of a place I would have, and I have just as good a right to claim a fair place as a poor one."

It also appeared that it was the custom annually to settle the wages for the "coming season." There was no pretence that this had been done at the time of the alleged conversation between Mr. Duffield and the plaintiff.

It seems impossible to construe this transaction, as understood by the plaintiff, into a contract of hiring. The essential terms were not settled by the parties to it. The rate of wages was not fixed, nor was the place in the works to be given to the plaintiff agreed upon. In his narration of the affair, he said: "The manager of the defendant's factory did not say what kind of a place I would have, and I have just as good a right to claim a fair place as a poor one." It is evident from this that the plaintiff himself thought that if a poor place had been assigned to him he would not have been bound to take it, and he was right in this conclusion, as, in that respect, he had not stipulated to take any particular position. In *Ridgeway* v. *Wharton*, 6 *H. L. Cas.* 268, Lord Wensleydale says: "An agreement, to be finally settled, must comprise all the terms which the parties intended to introduce into the agreement. An agreement to enter into an agreement, to be afterwards settled between the parties, is a contradiction in terms. It is absurd to say that a man enters into an agreement till the terms of that agreement are settled. Until those terms are settled, he is perfectly at liberty to retire from the bargain."

Tested by this rule, the present transaction was not a completed bargain, but a negotiation in contemplation of a bargain, for it would be utterly unreasonable to say that in the interview in question the plaintiff undertook to enter the service of the defendant without reference to the situation to be assigned to him, and without reference to the wages to be paid.

The rule to show cause must be made absolute.