## THOMAS-HUYCKE-MARTIN COMPANY *v.* GRAY.

### Opinion delivered February 7, 1910.

1. CONTRACT—MUTUALITY.—A contract whereby defendant at a price fixed undertook to buy the output of a sawmill is not lacking in mutuality as not binding the plaintiffs to sell, since the contract implies a corresponding obligation on the part of the plaintiffs to sell at the stipulated price. (Page 11.)

2. SALES OF CHATTELS—RESCISSION.—Where a contract for the sale of lumber stipulated that the lumber should be stacked in a certain manner, the vendee, after accepting a lot of lumber, could not refuse to receive any more lumber because the lumber already received had not been properly stacked. (Page 13.)

Appeal from Scott Circuit Court; *Daniel Hon,* Judge; affirmed.

*H. N. Smith* and *T. F. & R. D. Garver,* for appellant.

1. The contract is void for want of mutuality. Under it appellants agree to pay a certain price for lumber of a certain grade, but nowhere are appellees under any obligation to saw or furnish any particular quantity. They were left free to shut down at any time, or, if opportunity was presented to them after moving the mill to the second location, to sell at an increased price. Nothing in the contract would prevent. 1 Ark. 391, 415; 59 Kan. 601; 60 Kan. 424; 58 Mich. 574; 93 Mich. 491; 157 Ill. 339; 36 La. Ann. 35; 13 O. St. 84; 43 Minn. 11.

2. The manner in which appellees entered upon performance of their contract, the way the lumber was stacked, was sufficient ground to rescind the contract, and appellant should have been permitted to introduce proof to show it.

3. The court erred in instructing the jury that if defendant had failed to show a subsequent verbal contract they should find for the plaintiff.

4. The charge as to the measure of damages was erroneous. If this was a valid contract, it was executory, and appellees could not enhance their damages by incurring additional expense in manufacturing lumber from the timber after they learned that appellant would no longer accept it; and a party to such a contract has a right to prevent a full performance by making the other party whole as against the loss which, unenhanced by his own acts after receiving information of a refusal

further to perform, he would suffer thereby.  37 Vt. 239; 115 Mass. 159, 162.

*J. H. Carmichael* and *A. G. Leming,* for appellees.

1.  No defense was interposed or attempted except the claim of a verbal contract.  The court therefore quite correctly charged the jury that if the defendant had failed to show a verbal contract made subsequent to the written contract, they should find for the plaintiffs.

2.  The evidence fully sustains the verdict.  Under the contract the price agreed upon for lumber to run No. 2 and better was the price at the mill yard, and appellant was to check the lumber once each month and pay for it on the yard, all lumber not grading No. 2 to be charged back to the appellees.  Except for appellants' refusal to accept, the facts in evidence show a tender that would amount to a delivery.  35 Ark. 304; 54 Ark. 305.

McCULLOCH, C. J.  Plaintiffs, Gray & Sons, were owners of a portable saw mill, and were engaged in manufacturing and selling lumber.  The Thomas-Huycke-Martin Company was dealing in lumber, and those parties, plaintiffs and defendant, entered into a written contract for the sale of the output of the mill, the contract (omitting caption) being as follows:

"The Thomas-Huycke-Martin Company, parties of the first part, agree to take from Gray & Sons the mill cut from the mill belonging to the parties of the second part located on Jones's Creek, Scott County, Arkansas.  The Thomas-Huycke-Martin Company, parties of the first part, agree to pay the parties of the second part eight dollars and twenty-five cents ($8.25) per thousand feet mill run for all merchantable lumber to run No. 2 and better, with the usual rule of measuring 2 inches only to be counted with one-eighth off and to cut lumber from 10 to 20 feet and to cut one and two inch, and are to cut as requested by the parties of the first part.  It is further agreed and understood by both parties that the price of $8.25 is the price for lumber at the mill yard for all merchantable lumber cut and stacked properly, and are to stack each length and width separate, and to stack the lumber 200 feet away from the mill, so the parties of the first part can obtain insurance.  The Thomas-Huycke-Martin Company will check the lumber once each month and pay for it

on the yard; all lumber that will not grade No. 2 to be charged back to the parties of the second part. It is further agreed and understood that all the lumber now on the yard is to come in under the contract of November 5, 1906, and as soon as the amount is hauled in then the new contract takes effect.

"Present set to be 100 feet from mill and next set 200 feet from mill.

"Gray & Sons,

"Thomas-Huycke-Martin Co."

The word "set" as used in the latter part of the contract meant, according to the evidence, the location of the mill or place where it was being operated. When the contract was entered into, plaintiffs were engaged in sawing lumber at a certain location, and this is what was meant by the words "present set;" and the next location referred to is what was meant by the words "next set." Defendant accepted and paid for all the lumber sawed at the first or present location, referred to in the contract, though complaint was made of the manner in which the lumber was stacked, and plaintiffs allowed a small discount for culls which were in the stacks. Defendant refused to accept any more lumber from plaintiffs, and they instituted this action to recover damages alleged to have been sustained by reason of defendant's refusal to accept the lumber sawed at the second location referred to in the contract. It is alleged in the complaint that plaintiffs sawed 400,000 feet of lumber, and that the damages caused by defendant's refusal to accept it amounted to $3.50 per thousand.

Defendant in the answer admitted the execution of the contract, but denied that it had violated the terms thereof, and alleged that plaintiffs broke the contract by failing to saw and stack the lumber in accordance with the specifications of the contract. The trial before a jury resulted in a verdict in plaintiffs' favor for the sum of $585.11, and defendant appealed.

Some of the defendant's exceptions were not preserved in the motion for new trial, and some that were so preserved are not insisted on here. We will consider only those insisted on here which were properly preserved in the motion for new trial.

It is first insisted that the complaint does not state facts sufficient to constitute a cause of action, for the reason that the

contract set forth therein lacked mutuality and was not binding. It is said that the contract attempted to bind the defendant to purchase the lumber, but did not bind plaintiffs to sell and deliver it. The written contract is ambiguous as to the subject-matter upon which it is intended to operate, but we think that the addition of the words "present set to be 100 feet from the mill, and next set 200 feet from the mill," together with the attending explanatory facts and circumstances, makes it plain that the contract referred to the lumber sawed at the (then) present location and the next location of the mill. The obligation of the defendant, expressed in the contract, to purchase the lumber implied a corresponding obligation on the part of the plaintiff to sell and deliver it at the prices named and on the stipulated terms, and the language of the contract shows an agreement on their part to sell and deliver the lumber to defendant. *Minneapolis Mill Co.* v. *Goodnow,* 40 Minn. 497; *Lewis* v. *Atlas Mut. Life Ins. Co.* 61 Mo. 534; *Jones* v. *Binford,* 74 Me. 439; *Miller* v. *Board Com. Weld. Co.,* 67 Pac. (Col.) 347; *Bangor Furnace Co.* v. *Magill,* 108 Ill. 656.

The contract does not present a case where the obligations are all on one side and none on the other side. Such a case is that of *St. Louis, I. M. & S. Ry. Co.* v. *Matthews,* 64 Ark. 398, and *Davie* v. *Lumberman's Min. Co.,* 93 Mich. 491, and others which might be cited. The case of *Minneapolis Mill Co.* v. *Goodnow, supra,* is very much in point. There the agreement provided that "the Minneapolis Mill Company agrees to saw for said John Goodnow, in its Jones Mill, so called, during the summer of 1887, six million feet or more of pine logs; said sawing to be done in good and workmanlike manner, and as shall be directed from time to time by said John Goodnow or his agent. Said John Goodnow agrees to pay said Minneapolis Mill Company for sawing, scaling, loading and delivering at his piling place," etc. The court, in construing this provision, said: "There is in this agreement no express promise on the part of Goodnow to furnish for plaintiff to saw the 6,000,000 feet of logs which the plaintiff is to saw for him and as he shall direct. But that is necessarily implied. How could it saw the logs as he should direct unless he should furnish them? There can be little doubt that, as the parties understood this agreement when they

executed it, Goodnow was thereby engaging to furnish the 6,000,000 feet of logs for plaintiff to saw, and plaintiff was engaging to saw them in the manner and at the prices specified. A third party would so understand it."

The Maine case cited above is also clearly in point. There, a number of farmers, including defendant, signed an agreement to plant sweet corn suitable for packing, and to deliver the product to plaintiff, and plaintiff agreed to pay certain stipulated prices for all corn which it received. It was argued that there was no mutuality because the plaintiff had not agreed to receive this corn, but only to pay certain prices for that which it did receive. The court, in construing the contract, said: "The only fair construction which can be given to this contract, and the one which expresses the meaning of the parties better than the any other, is that the defendant undertakes to plant and cultivate a specified quantity of the land to sweet corn and deliver what is so raised at the plaintiff's factory when fit for packing, when notified if reasonable notice is given, or, if no reasonable notice is given, he may still deliver it during the time specified, and for all the corn so raised and delivered the plaintiffs must pay the stipulated price. Thus it is a simple contract for the production, sale and purchase of personal property. This construction relieves it from objection on the ground of any alleged illegality, as well as from want of consideration."

In *Lewis* v. *Atlas Mut. Life Ins. Co., supra,* it is said: "It very frequently happens that contracts on their face and by their express terms appear to be obligatory on one party only; but in such cases, if it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied. As, if the act to be done by the party binding himself can only be done upon a corresponding act being done or allowed by the other party, an obligation by the latter to do or allow to be done the act or things necessary for the completion of the contract will necessarily be implied."

The next assignment is that the court erred in refusing to allow the defendant to show that the lumber sawed at the first lo-

cation of the mill and accepted and paid for by defendant was not sawed and stacked in accordance with the specifications of the contract. It was not erroneous to exclude that testimony. It is undisputed that, notwithstanding defendant's objection to the manner in which the first lot of lumber was sawed or stacked, it waived those objections and accepted the lumber and paid for it. That part of the contract was therefore fully performed, and defendant's objections to the manner in which it was performed by plaintiff, after such objections were waived by acceptance of the lumber, could not be made grounds for refusal to perform the remainder of the contract. There was no proof offered that defendant, in accepting the lumber, stipulated that the balance of the contract would be abrogated, nor that the lumber sawed at the next location of the mill failed to come up to the requirements of the contract. If the first installment of lumber was not up to contract, defendant had a right either to reject it and treat the contract as broken, or to accept the lumber and treat the contract as being still in force. He could not, with full knowledge of the facts, do both. 3 Page on Contracts, § 1494.

The court gave the following instruction over defendant's objection: "If defendant has failed to show a verbal contract made subsequent to the written contract, then your verdict should be for plaintiffs." This was an indirect way of stating the issue in the case, but, as the defense from liability under the contract rested primarily on proof that there was a subsequent verbal contract, the instruction reached to the issue in the case. Defendant contended that the words, "present set to be 100 feet from the mill, next set to be 200 feet from the mill," were not incorporated in the contract, but that, subsequent to the time it was entered into, the parties thereto verbally agreed that, if the lumber sawed at the first location was satisfactory to defendant, defendant would take the lumber to be sawed at the next location, and that the words referred to above were noted on the contract merely as a memorandum, and not as a part of the contract. Plaintiffs contended that the words were added to the contract as a part thereof, before it was signed, and that there was no verbal agreement between the parties subsequent to the execution of the contract. That was the principal issue

of fact in the case; and if the jury found that there was no subsequent verbal contract, then the written contract prevailed, and, according to the undisputed testimony on the other issues, the plaintiffs were entitled to recover.

Excessiveness of the verdict is not set up as grounds for new trial, but it is contended that the evidence as to the market value of the lumber is not sufficient to sustain the verdict. While the evidence on this point is not entirely satisfactory, we think there is enough to sustain the verdict.

Judgment affirmed.