CHICAGO, R. I. & G. RY. CO. v. MARTIN.†

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 22, 1913. Rehearing Denied Jan. 10, 1914.)

1. CONTRACTS (§ 189*) — TRANSPORTATION OF PASSENGERS—MUTUALITY OF OBLIGATION.

Under a contract whereby plaintiff agreed to transfer all passengers furnished with coupons or checks from defendant's station to another station in the city, and also all checked baggage, at a certain price, and to be responsible for any loss of or injury to passengers or baggage, the contract to be binding on the parties and their assigns, terminable by either on 30 days' notice, there was an implied obligation on the part of defendant to present for transportation all its passengers furnished with coupons, for breach of which plaintiff, being willing and able to perform, might recover.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 811–845, 900–902, 905; Dec. Dig. § 189.*]

2. CONTRACTS (§ 303*)—ACTION FOR BREACH—DEFENSES—INABILITY TO PERFORM.

In an action for breach of a contract for the transportation of passengers, defendant, who had breached the contract, could not be heard to complain, or be relieved from the consequences on the ground that, as plaintiff had transferred the contract and his outfit, he was unable personally to carry it out.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1398, 1399, 1400, 1463, 1464, 1467–1475; Dec. Dig. § 303.*]

Appeal from Jack County Court; W. E. Fitzgerald, Judge.

Action by J. M. Martin against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Lassiter, Harrison & Rowland, of Ft. Worth, and Stark & Stark, of Jacksboro, for appellant. Fitzgerald & Cox, of Wichita Falls, for appellee.

CONNER, C. J. This appeal is from a judgment in appellee's favor for $850 as damages for a breach of a transportation contract. The contract in question was dated November 22, 1909, and by its terms Martin was denominated party of the first part and the railway company party of the sec-

ond part. The material portions of said contract are as follows:

"I. In consideration of the agreements herein stipulated the party of the first part agrees to carry and transfer all passengers of the party of the second part from its depot in the city of Jacksboro, Texas, to the depot of the Gulf, Texas & Western Ry. Co. in said city, in all cases where such passengers have transfer coupons or conductor's checks.

"II. For the consideration mentioned the party of the first part hereby agrees to carry and transfer all baggage from the depot of the party of the second part in the city of Jacksboro, Texas, to the depot of the Gulf, Texas & Western Ry. Co. where said baggage is covered by through checks.

"III. The party of the second part hereby obligates itself to pay to the party of the first part twelve and one-half (12½) cents for each transfer coupon or conductor's check collected and returned; and it further agrees and binds itself to pay to the party of the first part twelve and one-half (12½) cents for each piece of baggage transferred by it, covered by through checks.

"IV. The party of the first part hereby agrees that it alone shall be responsible for the loss, damage or delay of any baggage, while being transferred by it; and further agrees that it alone shall be liable for any injury, damage or delay whatsoever to any passenger while in its charge.

"V. The party of the first part agrees to transfer all passengers and baggage promptly on arrival of such passengers and baggage at Jacksboro, Texas.

"VI. This agreement shall be and remain in force between the parties hereto until superseded or canceled in the manner hereinafter provided.

"VII. It is mutually agreed that this agreement shall be binding upon the parties hereto and their assigns.

"VIII. It is mutually agreed between the parties hereto that the filing of any suit or suits by the one party against the other, for the breach of any provision of this agreement shall not have the effect of terminating this agreement, but that the same shall remain in force and effect until terminated as hereinafter provided.

"IX. It is mutually agreed that either party to this contract may terminate it at any time by giving the other party thirty (30) days' written notice of its desire to do so."

The evidence tended to show that, from the date of the contract until June 28, 1911, the appellant railway company, in selling tickets to passengers destined for points on the Gulf, Texas & Western Railway, required the payment of 25 cents as a transportation fee from its depot in Jacksboro to the depot of the Gulf, Texas & Western Railway in the same town, and that pursuant to the terms

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

of the contract appellee regularly received and transported all such passengers, with their baggage, as presented themselves for that purpose, receiving from appellant therefor the compensation specified in the contract; that on said June 28th the appellant company made an arrangement with the Gulf, Texas & Western Railway Company for interchanging passengers and baggage at Jacksboro by means of a through car. The Rock Island did not operate this car between the two depots, but uniformly received it at its own depot, from whence it was transported to and fro by the Gulf, Texas & Western Railway Company. After the operation of this through coach began, appellee was afforded no further opportunity of transferring either passengers or baggage, and there is evidence which would authorize the conclusion that he could and would have done so, save for the adoption of interchanging passengers and baggage by means of the through car as stated. The evidence also authorizes the conclusion that appellant at no time gave to appellee written notice of its desire to terminate the contract, as provided in its ninth clause.

[1] The controlling question we think is one of construction. That is, does the contract which we have quoted imply an obligation on appellant's part to present to appellee for transportation, in accordance with its terms, all such of its passengers as they had furnished with transportation coupons, as appellee insists, or does the contract, as appellant contends, amount to no more than an obligation on its part to pay appellee at the specified rates for such passengers and baggage as should in fact be presented to and actually transported by appellee? The contract, it is true, does not in express terms bind appellant to furnish or present to appellee for transportation its passengers destined to points on the Gulf, Texas & Western Railway, from whom they had collected the price and furnished transfer coupons, but we think this must be implied during the life of the contract. The contract at least imported an obligation on appellant's part not to give to another during its continuance the right that must have been contemplated by both parties thereto at the time of its execution. To hold otherwise is to impose upon appellee the burden of furnishing ways and means for the accommodation of appellant's passengers in the way of the transfer mentioned in the contract, and to leave it wholly optional with appellant as to whether appellee should have an opportunity to reap the reward provided for by the terms of the contract.

In the case of Lewis v. Atlas Mut. Life Ins. Co., 61 Mo. 534, it is said: "It very frequently happens that contracts on their face and by their express terms appear to be obligatory on one party only; but in such cases, if it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied. As, if the act to be done by the party binding himself can only be done upon a corresponding act being done or allowed" to be done "by the other party, an obligation by the latter to do or allow to be done the act or thing necessary for the completion of the contract will be necessarily implied."

In the case of Thomas-Huycke Martin Co. v. Gray & Sons, 94 Ark. 9, 125 S. W. 659, 140 Am. St. Rep. 93, by the Supreme Court of Arkansas, it was held that a contract to receive and pay at specified rates the output of a portable mill was not lacking in mutuality because not binding the sellers to sell and deliver it, since a corresponding obligation on the part of the seller to sell and deliver the lumber would be implied from the obligation of the purchaser to purchase and receive it. This case cites, among others, the case of Minn. Mill Co. v. Goodnow, 40 Minn. 497, 42 N. W. 356, 4 L. R. A. 202, where it appears that the mill company had agreed to saw for Goodnow a specified number of feet of pine logs, Goodnow agreeing to pay therefor a specified price, but not agreeing specifically to furnish the logs to be sawed. It was held that the agreement to furnish the logs would be implied. We approve, as applied herein, the doctrine of the cases referred to and accordingly overrule appellant's second, third, fourth, and fifth assignments involving the question.

The only remaining assignment assails the verdict of the jury on the ground that the evidence shows that appellee, Martin, assigned his contract for carrying passengers to Hardin & Flowers in March, 1912, after which time appellee was unprepared to carry out his contract personally. At most this objection would reach a portion only of appellee's recovery, but, regardless of this suggestion, we think the assignment must be overruled. The evidence at least authorizes the conclusion, evidently reached by the jury, that the contract sued upon in this case had not been assigned as charged, and that appellee could and would have carried out his part of the contract notwithstanding the sale of his horses and transportation vehicles to Hardin & Flowers in March, 1912.

[2] Moreover, if appellant breached its contract, as it seems it undisputedly did, and thereby perhaps deprived appellee of an opportunity of profitably using his transfer agencies, it ought not to be now heard to complain, or be relieved from the consequences of its breach on any such ground.

We conclude that the evidence supports the material allegations of the plaintiff's petition, and that all assignments should be overruled and the judgment affirmed.