## BURGER v. RAY.  (No. 8614.) *

(Court of Civil Appeals of Texas. Dallas. Feb. 11, 1922. Rehearing Denied March 18, 1922.)

**1. Sales 76—Price impliedly what article is reasonably worth where contract otherwise complete makes no reference to price.**

If the parties have agreed to all the other elements of the sale and have made no reference to the price, the law will by implication fix the price at the amount that the article is then reasonably worth.

**2. Contracts 168—Implied terms as binding as those actually expressed.**

A contract not only includes the things said or written, but also terms and matters which, though not actually expressed, are implied by law and are as binding as those terms actually written or spoken.

**3. Contracts 10(2)—Contract to perform services not invalid for failure to agree as to compensation.**

An agreement to thresh grain crops was not invalid for want of mutuality for failure of parties to agree as to the amount to be paid for the services; a reasonable sum being implied in the absence of an express understanding.

**4. Pleading 274—Omissions or defects in original petition can be supplied or corrected only by proper amendment, and not by supplemental petition.**

Omissions or defects in an original petition cannot be supplied or corrected by supplemental petition, but omissions can be supplied and defects corrected only by proper amendment of the original petition.

**5. Appeal and error 192(1)—Defects in pleading cannot be raised for first time on appeal.**

Defects in pleading not raised at the trial court by proper exception cannot be raised for the first time on appeal, but will be considered as having been waived.

**6. Trial 352(4)—Refusal of special issues without evidence in support thereof not error.**

Refusal of special issues, where there was no evidence in support thereof, was not error.

**7. Trial 351(5)—Refusal of special issues included in issues submitted by court not error.**

Refusal of special issues included, in so far as the evidence would justify, in special issues submitted by the court, was not error.

**8. Trial 351(5)—Refusal of special issues calling for findings on evidence without submitting issue of fact not error.**

Refusal of special issues requesting the jury to find on questions of evidence, and not submitting any issue of fact, was not error, where special issues submitted by court called for a finding of fact on the evidence involved in such requested issues.

**9. Contracts 212(2)—Reasonable time for performance implied where parties do not agree.**

Where parties to contract for threshing of grain crop did not agree as to time of performance, a reasonable time will be implied by law.

Appeal from District Court, Collin County; F. E. Wilcox, Judge.

Suit by A. C. Ray against Joe Burger. Judgment for plaintiff, and defendant appeals. Affirmed.

Smith & Abernathy, of McKinney, for appellant.

John Doyle and H. L. Davis, both of McKinney, for appellee.

VAUGHAN, J. The controlling question presented is whether the alleged contract to thresh appellee's wheat and oat crops was complete as agreed to so that failure on part of appellant to perform constituted a breach for which appellee was entitled to recover damages occasioned thereby. The contract was oral, and, as established by the evidence, was as follows: On the 27th day of June, 1919, appellant agreed and promised that he would thresh for appellee 100 acres of wheat and 25 acres of oats in the shock in field owned by appellee, the work to begin on June 30, 1919. The price to be paid appellant by appellee for the work was not agreed upon nor even discussed in the making of said contract.

Appellant on the trial in the court below contended, and now contends, that the contract was not complete, there being no mutuality in that, while the evidence shows that appellant promised to thresh the wheat and oat crop of the appellee, there is no evidence showing that he promised to accept and pay for said services; that there was no evidence showing that the appellee would pay any certain price, nor was there any terms agreed upon between the parties by which it can be determined at what price appellant was to thresh said crops; that there was no evidence that there was any agreement between the parties as to whether said crops should be threshed independently, that is, that appellant was to furnish the threshing outfit and all the hands and workmen and feed them and their teams, nor was there any evidence to show that said crops were to be threshed dependently, that is, the appellant to furnish the machinery and three men and the appellee to furnish all of the wagons and teams and feed the men and furnish the coal; that there was no evidence upon said contract as to whether appellee or the appellant was to furnish the coal to do said threshing; that the evidence does not show that appellee promised anything; and that both

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 17, 1922.
239 S.W.—17

the pleadings and evidence show a nudum pactum.

Special issues were submitted to the jury and answered as follows:

"(1) At the time defendant agreed to thresh plaintiff's crops of wheat and oats was it mutually understood by both plaintiff and defendant, though not expressed in words, that plaintiff would pay defendant a reasonable price for threshing said grain, and that defendant would accept the same therefor? Answer Yes or No. Answer: Yes.

"(2) Was plaintiff damaged by defendant's failure to thresh his grain? Answer Yes or No. Answer: Yes.

"(3) What sum of money will fairly and reasonably compensate plaintiff for the damage, if any, which he has sustained by reason of defendant's failure to thresh when it could reasonably have been done after the contract was entered into, if it was? Answer: $1,500."

The following facts were established by the evidence: Appellee, C. A. Ray, during the year 1919 owned a grain crop which consisted of 100 acres of wheat and 25 acres of oats. On the 24th day of June, 1919, appellee had a conversation with appellant in reference to threshing said grain crops then in shock ready to be threshed. Appellant promised appellee to come and look at the wheat and see how much he could get in the neighborhood, and then he would tell appellee whether he would thresh it or not. On the same day appellee looked at the wheat. After this, to wit, on the 27th day of June, 1919, appellee again saw appellant, and he told appellee he would thresh his grain crops, and that he would be out on Monday morning. The 27th of June was on Friday, and the following Monday was June 30, 1919, on which date appellant moved his thresher and placed it in the field where appellee's grain was shocked. The thresher remained there until July 4, 1919, on which date it was moved away. Appellant did not thresh appellee's grain or any part thereof.

Appellee testified to following additional facts:

"Appellant and I did not have any specific contract as to what he would charge for threshing. I related the conversation that we had, and there was nothing said about the price. After we had our conversation I got the coal, sacks, and help to take care of the grain when it was threshed, and three men and teams to help appellant. The reason that was done was because he told me that he was short of help and lacked three men and teams, and asked me if I could get them. He wanted them for the bundle wagons to haul in the grain. There was no agreement about the price at all; I just supposed that appellant would thresh for the customary and usual price. The customary price for threshing in the neighborhood where my grain was located was 22 cents per bushel for wheat and 11 cents per bushel for oats, which would be a reasonable price for threshing wheat and oats of the character and condition that mine were at the time appellant was there.

Had he threshed my grain, I could and would have paid him for the work."

Appellant was running what is called an independent outfit. By that is meant he furnished all the help, everything except fuel, and threshed for so much a bushel. Without any fault on the part of appellee, appellant failed and refused to thresh appellee's grain crops. Appellant, over appellee's protest, moved his thresher off appellee's premises and shipped the same to Oklahoma. The only reason assigned by appellant to appellee for so doing was that he could make more money threshing grain in Oklahoma. No effort was made to fix the price. That appellee's grain was not damaged by hail more than the crops of his neighbors which were threshed that season at 22 cents per bushel for wheat and 11 cents per bushel for oats, which was a reasonable price.

The jury found in answer to special issue No. 1 that at the time appellant agreed to thresh appellee's crop of wheat and oats it was mutually understood by both appellant and appellee, though not expressed in words, that appellee would pay appellant a reasonable price for threshing said grain, and that appellant would accept the same therefor.

Appellant by first assignment of error and propositions thereunder contends that the trial court erred in refusing to instruct the jury to render a verdict in his favor, and by sixth assignment of error and propositions thereunder contends that his motion for a new trial should have been granted, because the evidence in the case is wholly insufficient to support the verdict of the jury and the judgment of the court, which assignments and propositions, in effect presenting the same proposition, will be so considered. As thus presented, the question involved is whether or not the parties had entered into a contract for the threshing of appellee's grain crops by appellant. Appellant contends that the contract was not a consummated agreement—that is, complete in its expressed terms—because the price to be paid for threshing the grain crop had not been agreed upon, and that because of this fact there was a want of mutuality to one of the essential provisions of the alleged contract. Necessarily the making of the contract for the threshing of appellee's grain crop involved as one the essential provisions the price to be paid, which must either appear from the expressed terms of the contract or be implied from such terms before the contract can be held to be complete. Was it necessary that the parties expressly agree upon the price for the contract to be binding, or would the price to be paid be implied by law from the express elements of the contract established by the evidence? The parties agreed to all the other elements, viz. that appellee was the owner of a certain lot of grain, 100 acres of wheat and 25 acres of oats

in the shock ready to be threshed. This was what appellee desired to contract with appellant to do when he opened negotiations with him. Appellant was running a threshing outfit. When approached by appellee, he did not then agree to do the work, but stated that he would go look the situation over. This he did, informing himself as to the condition and character of the grain owned by appellee, and as to other grain to be threshed in that neighborhood, the condition of the road necessary to be traveled in order to move his threshing outfit on appellee's land where the grain crops to be threshed were located, etc. After making this examination, to wit, on the 27th day of June, 1919, appellant agreed with appellee that he would thresh appellee's grain crops. Appellee was insistent upon having the work done as early as possible. Appellant agreed to begin the work, or at least to be out with his machinery ready to thresh said grain on June 30, 1919, and, in keeping with his agreement, he did move the machinery on the 30th day of June, 1919, and place same in the field where appellee's grain crop was in shock which machinery remained where placed until the 4th day of July, 1919, when, without any default on the part of appellee, but over his objections, appellant moved the machinery, assigning as his reason for so doing that he could make more by threshing in Oklahoma. The question of price to be paid was not agreed upon or even discussed during the negotiations leading up to the agreement on the part of appellant to thresh appellee's grain on the 27th day of June, 1919, and no effort was made by appellant to reach an agreement with appellee in reference to the price before or at the time he moved his machinery away.

From the above it is very clear that the only element of the contract omitted was the price to be paid for threshing the grain, and it was not because the price had not been agreed upon, or because appellee would not agree with appellant in fixing the price to be paid, but by reason of the fact that appellant could make 'more by threshing wheat in Oklahoma, that he breached the contract he had made with appellee. Notwithstanding no reference to the price to be paid was made between the parties, the law by implication fixed the price to be what the work was then reasonably worth.

We appreciate the fact that we are, in a large measure, in a realm of speculation; do not know, and cannot know to a certainty, what, in fact, was the attitude of the minds of the parties further than as disclosed by the language employed; and whether or not the transaction produced the same conclusion in the minds of appellant and appellee must be determined from the purpose sought to be accomplished, the attitude of the parties, and the subject-matter of the contract, as revealed by its express terms. Even then the conclusion drawn will not necessarily be absolutely correct. However, as we view the terms of the contract as established by the evidence, it is probable that in this instance there is such a combination of known circumstances with known expressed agreements as above reviewed to show beyond question what should be supplied in order to give the contract, as in fact made, its proper legal effect. We understand that the law justifies the resort to such means rather than to destroy a contract because of some term omitted where from express terms, it is apparent that in the making of the contract the parties must have had in mind the inclusion of the omitted term, the implication following as a logical deduction to give effect to the express language employed.

[1, 2] We think the following rule of law announced by the Supreme Court of Arkansas in the case of Bowser & Co. v. Marks & Co., 96 Ark. 113, 131 S. W. 334, 32 L. R. A. (N. S.) 429, Ann. Cas. 1912B, 357, is a correct rule to be applied in disposing of this case:

"If the parties have agreed to all the other elements of the sale and have made no reference to the price, then the law will by implication fix the price, which will be what the article is then reasonably worth. A contract not only includes the things said or written, but also terms and matters which, though not actually expressed, are implied by law, and these are as binding as those terms actually written or spoken."

The following authorities, we think, amply support the conclusion reached by us: Shealy v. Edwards, 73 Ala. 175, 49 Am. Rep. 43; Bird et al. v. Couchois et al., 214 Mich. 607, 183 N. W. 36; Schneider v. Hildenbrand et al., 14 Tex. Civ. App. 34, 36 S. W. 784; Benjamin on Sales (7th Ed.) § 85; Mechem on Sales, vol. 1, § 207.

[3] Under the facts of this case we hold that mutuality exists by implication of law. It is very clear that, if appellee had breached the contract by refusing to permit appellant to thresh his grain crops, appellant would have had a cause of action for damages. Appellee could not have successfully defended on the ground that the contract was incomplete in that it did not provide for the price to be paid, and was therefore wanting in mutuality. Griffith v. Bradford (Tex. Civ. App.) 138 S. W. 1072; Chicago, R. I. & G. Ry. Co. v. Martin (Tex. Civ. App.) 163 S. W. 313; Wilson v. Beaty (Tex. Civ. App.) 211 S. W. 524. On authority of the last citation the facts of this case justify us in saying the certainty or uncertainty of the contract in reference to the price to be paid appellant for threshing appellee's wheat was not concerning him. He simply decided that he could make more money threshing in Oklahoma than he could in Texas; therefore, he would not regard

the contract made with appellee, but would proceed to disregard same. He knew what the compensation was in the absence of an agreement fixing the specific price, to wit, that it would be the reasonable or customary prevailing price, and the matter of uncertainty in the price apparently did not occur to appellant until after he had breached his contract with appellee. Tex. Seed & Flo. Co. v. Chicago S. & S. Co. (Tex. Civ. App.) 187 S. W. 747; Long v. Martin (Tex. Civ. App.) 234 S. W. 91.

"To show mutuality the obligation may be implied as well as expressed. Although on its face and by its express terms the contract is obligatory on one party only, yet, if the intention of the parties and the consideration on which the obligation is assumed is that there shall be a correlative obligation on the other side, the law will imply it." 13 C. J. § 180.

Therefore we hold that the mere fact that the contract between appellant and appellee did not by express terms provide for the payment for appellant's services in threshing the grain did not deprive it of mutuality; the agreement to pay being a fair inference from the express terms of the contract. This is in keeping with the following well-recognized principles of law which have materially aided us in arriving at what we think to be a proper disposition of the questions involved on this appeal:

"The law leans against the destruction of contracts on the ground of uncertainty, and a contract will not be declared void on that ground, unless, after reading it and interpreting it in the light of the circumstances under which it was made, and supplying or rejecting words necessary to carry into effect the reasonable intention of the parties, their intention cannot be fairly collected and effectuated." Leffler Co. v. Dickerson, 1 Ga. App. 63, 57 S. E. 911.

"Omission to express certain terms in a contract does not render it indefinite or uncertain if such terms will be supplied by implication of the law. If the compensation is not fixed by the terms of the contract or by fair construction therefrom, the contract may nevertheless be enforced if a reasonable compensation was intended." 1 Paige on Contracts, 130, citing St. L. & S. F. Ry. Co. v. Gorman, 79 Kan. 643, 100 Pac. 647, 28 L. R. A. (N. S.) 637; Nyhart v. Pennington, 20 Mont. 158, 50 Pac. 413; Perkins v. Hasbrouck, 155 Pa. 494, 26 Atl. 695; Wojahn v. Nat. Union Bank, 145 Wis. 646, 129 N. W. 1068.

"Whenever the parties to the contract of sale have failed for any reason to stipulate the price, and in every other respect the contract of sale is complete, the deficient element will be supplied by the implication of the law that the parties agreed to pay what the goods were reasonably worth. And the reasonable value is ordinarily determined by the market price at the time and place of delivery. It was once doubted whether an executory contract of sale was binding on the parties, where the parties had not agreed upon a price. But it is now the established rule that the executory as well as the executed contract of sale is binding, notwithstanding there has been no express agreement as to the price, the law in such cases implying that the parties had agreed to pay the value of them." Tiedeman on Sales, § 47.

As consequences follow causes, the conclusion reached by us is as inevitable, to wit, that from the express terms of the contract as made by the parties the law implied the omitted necessary element, the price to be paid, and thereby the contract was complete in all essentials from the moment appellant contracted in express terms to thresh appellee's grain crop, although the price to be paid for the work was not even mentioned; the law in this respect working with absolute impartiality, in that both parties were bound in he same degree to the performance of the covenants resting upon them respectively. The implication had its existence in the thought which produced the agreement to thresh the grain crop "just as the plant exists in the seed." No more steadfast is gravitation than justice in balancing her scales with even accuracy.

[4, 5] Under the first assignment of error appellant also presents the following proposition:

"That plaintiff's original petition did not contain a cause of action and he could not recover on his supplemental petition."

This proposition states a correct rule of subjunctive law, to wit, omissions or defects in an original petition cannot be supplied or corrected by supplemental petition and thereby properly plead a cause of action. This can only be done by proper amendment of the original petition, etc. Creosoted Wood Block Paving Co. v. McKay et al. (Tex. Civ. App.) 234 S. W. 587. However, this defect in the pleading should have been raised in the trial court by proper exception and cannot be for the first time raised on appeal. The error, not being objected to, will be considered as having been waived. Stoker v. Patton (Tex. Civ. App.) 35 S. W. 66; Paddleford v. Wilkinson (Tex. Civ. App.) 194 S. W. 467.

The conclusion reached by us necessarily results in appellant's first and sixth assignments of error and all propositions thereunder being overruled.

Appellant duly requested the submission of the following special issues, the refusal to submit same being assigned as error:

"No. 2. At the time the defendant promised to thresh the plaintiff's wheat and oat crop was it the understanding of the plaintiff that before the commencing of the threshing he and the defendant would agree upon the price for threshing the same?

"No. 2a. At the time the defendant promised to thresh the plaintiff's wheat and oat crop was it the intention of the defendant to set the price for the said threshing with the plaintiff before commencing the threshing?"

[6, 7] The court did not err in refusing to submit said special issues: (1) Because the evidence did not justify the submission of said' issues, there being no evidence introduced in support of either; (2) because, as far as the evidence would justify, said issues were appropriately included within special issue No. 1 submitted by the court, and that the finding in favor of appellee on such issue necessarily involved a finding contrary to the existence of the facts the jury would have been called upon to consider. Therefore said assignments are overruled.

[8] Appellant further contends that the court erred in refusing to submit the following special issues requested by him, to wit:

"No. 5. At the time defendant promised to thresh plaintiff's wheat and oat crop was there any agreement or understanding as to whether said crops were to be threshed independently or dependently?

"No. 6. At the time defendant promised to thresh plaintiff's wheat and oat crop was there any agreement and understanding between the parties as to who was to furnish the coal?

"No. 7. At the time defendant promised to thresh plaintiff's wheat and oat crop was it agreed and understood between the parties as to who was to furnish and pay for the hands, teams, wagons, and the feed during the threshing?"

And he presents by appropriate assignments the refusal of the court to submit same. Said issues only requested the jury to find on questions of evidence, and did not submit any issue of fact to be ascertained by the jury from the evidence introduced on the trial of the case. All of the agreements therein referred to were necessarily involved in the issue submitted by the court calling for finding of facts on the evidence, to wit:

"At the time defendant agreed to thresh plaintiff's crops of wheat and oats was it mutually understood by both plaintiff and defendant, though not expressed in words, that plaintiff would pay defendant a reasonable price for threshing said grain, and that defendant would accept the same therefor?"

Analyzing the issue above submitted, we have reached the conclusion that same called for a full and complete finding on all of the evidence in reference to the understanding of the parties concerning the price to be paid for threshing the grain crop, which necessarily included a finding on all of the evidence before the jury concerning any understanding that might have existed between the parties not contained in the express terms of the contract as revealed by the evidence. We are therefore of the opinion that the court did not err in refusing to submit said special issues, and overrule the assignments of error in reference thereto.

Appellant requested the court to submit the following special issue:

"Was there any agreement as to when the said wheat and oat crop should be threshed?"

The refusal of the court to submit same was properly presented by assignment of error contending that one of the essential terms of the contract was time of performance, and that the evidence failed to show that the parties had agreed on the time when appellee's grain crop should be threshed. The evidence established that appellee told appellant he wanted his wheat and oat crop threshed as soon as possible on account of it being in the bottoms and subject to overflow. On the 27th of June appellant contracted with appellee to thresh his wheat, stating that he would be out on Monday morning, which was June 30, 1919. He moved his machinery out and set it in appellee's field on June 30, 1919.

[9] The above evidence, we think, fixes the date of performance as of June 30, 1919, and certainly there can be no doubt that a reasonable time was necessarily implied by law for the performance of the contract from the date appellant agreed to thresh appellee's grain crop. We therefore overrule this assignment.

We have been very much impressed with the able and exhaustive brief presenting appellant's theory of the case, to wit:

"That the general rule is that price is an essential ingredient of every contract for the transfer of property or rights therein or for the rendering of services. In order that an executory contract may be enforceable, it is generally necessary that the price must be certain or capable of being ascertained from the contract itself."

The following authorities cited in behalf of appellant support the above contention: Flagg v. Mann, 2 Sumn. 486, Fed. Cas. No. 4,847; Fairplay School Tp. v. O'Neal, 127 Ind. 95, 26 N. E. 686; James v. Muir, 33 Mich. 223; Shaw v. Woodbury Glass Works, 52 N. J. Law, 7, 18 Atl. 696; Thomas v. Thomasville Shooting Club, 123 N. C. 285, 31 S. E. 654.

We recognize that there are two well-defined lines of decision concerning the rule of law applicable to the class of contracts known as executory where terms essential to the completion of same have been omitted, such as price to be paid for the services, date of performance, etc. However, we have, on careful investigation and consideration of the authorities cited, decided to follow that line of decisions in keeping with what we understand to be the most equitable and reasonable rule of construction as reflected by our observations made herein.

No reversible error being disclosed by the record, the judgment of the court below is affirmed.

Affirmed.