SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 70887–70892. May 6, 1936.

---

[1] Proceedings of the following petitioners are consolidated herewith: Thomas S. Scott; Security Trust Company, a Corporation, Executor of Louis des Cognets, Deceased; Charles N. Manning; W. R. Springate, Executor, and Irene Dorner, Executrix of the Estate of Karoline E. Gund; and Estelle des Cognets.

*George R. Hunt, Esq.*, and *Claude M. Houchins, Esq.*, for the petitioners.

*Brooks Fullerton, Esq.*, for the respondent.

### OPINION.

VAN FOSSAN: The respondent determined a deficiency in the income tax of the Fayette Home Telephone Co. in the sum of $256,-623.89 for the year 1929 and proposed to assess the same proportionately against the petitioners as transferees of the assets of that corporation, under section 311 of the Revenue Act of 1928. In these proceedings the petitioners contest their liability as such transferees.

The questions now at issue are:

(1) Whether the petitioners are liable as transferees of the assets of the Fayette Home Telephone Co. under the provisions of section 311 of the Revenue Act of 1928.

(2) Whether the Fayette Home Telephone Co. realized a taxable profit upon the transfer of its assets in 1929.

(3) Whether the Fayette Home Telephone Co. was entitled to a deduction from its gross income for unamortized discount on its bonds retired before maturity.

(4) Whether the Fayette Home Telephone Co. was entitled to a similar deduction for premiums paid by it on its bonds retired before maturity.

The facts, in substantially the following form, were agreed to by the parties:

The petitioners are former stockholders of the Fayette Home Telephone Co. (hereinafter called the Fayette Co.), a dissolved Delaware

corporation. The respondent has held them to be liable, as transferees of the assets of that corporation, for its alleged unpaid income taxes for the year 1929, in the amount of $256,623.89. The Fayette Co. was dissolved July 2, 1929, and at all times from December 15, 1928, to March 28, 1929, it had outstanding 101,240 shares of common stock, 3,000 shares of preferred stock, 7 percent bonds totaling $300,000 and 6½ percent bonds in the amount of $50,000. The bonds were secured by a mortgage upon its properties.

On December 15, 1928, S. E. Stern, to and through C. N. Manning, made an offer in writing to the stockholders of the Fayette Co. to purchase from them the outstanding shares of the common stock of that corporation and also the outstanding shares of stock of the Woodford Telephone Co. (hereinafter called the Woodford Co.). The stock of the Woodford Co., consisting of 10,000 shares, was owned and held by the Fayette Co. stockholders, pro rata, it having been issued to them in February 1928 as a dividend. The petitioners continued to be the owners of record of the stock of the Fayette Co. until the certificates were delivered by G. W. Thompson & Co. to the transfer agent for cancellation on March 28, 1929.

The offer made by Stern was to purchase not less than 67 percent of the said stock and up to 100 percent thereof at $30 per share for the Fayette Co. stock, the Woodford stock being included at no additional cost. The offer was accepted in writing by the holders of approximately 90 percent of such stock, including that held by the petitioners, prior to December 27, 1928, and by the holders of 100,920 shares, of the total 101,240 shares outstanding, prior to March 1, 1929, the time for the acceptance of such offer having been extended. The written offer and acceptance between S. E. Stern and the Southern Bell Telephone & Telegraph Co. (hereinafter called the Southern Bell Co.), resulting in the contract between such parties, is typical of similar contracts entered into between Stern and the other stockholders, and is as follows:

LEXINGTON, KY., *December 15, 1928.*

Mr. CHARLES N. MANNING,
    *President, Security Trust Company, Lexington, Ky.*

DEAR MR. MANNING: Confirming my conversation with you today, I will purchase from you and the other stockholders of the Fayette Home Telephone Company who may wish to sell, not less than sixty-seven per cent (67%) of the outstanding shares of the common capital stock of said Fayette Home Telephone Company at Thirty Dollars ($30) per share, and as many more shares of said common stock as are offered to me prior to December 27th, 1928, with the understanding that these shares are to be paid for in full on or before March 31st, 1929.

In addition I agree to the following conditions, to-wit:

That on or before December 31st, 1928, upon notification that not less than sixty-seven per cent (67%) of the total outstanding shares of the common capi-

tal stock of said Company have been deposited with the Security Trust Company subject to the terms of this proposal, I will deposit with the Security Trust Company of Lexington, Kentucky, as escrow agent, the sum of One Hundred Thousand Dollars ($100,000) as evidence of good faith and as part of the purchase price of said shares, such sum to be held by it for account of the depositing shareholders, in escrow, subject to the fulfillment on my part of the terms and conditions set out in this letter. In the event of failure on my part to fulfill any and all of the obligations of the purchaser, the amount deposited is to be paid to the depositing shareholders, free of any claim on my part.

You agree that the attached balance sheet and earnings statement are correct and represent the true and actual status of the Company, its income and all its disbursements for the period covered.

That there are no undisclosed contingent contracts or liabilities that have not been given effect to in said balance sheet and that no contracts will be entered into by this Company except in the usual course of its business during the term of this agreement, and except also the purchase at par value of 175 shares of Jessamine Telephone & Telegraph Company stock now owned by Southern Bell Telephone & Telegraph Company, and that you will not declare or pay any dividends except the usual quarterly dividends on the preferred stock and the regular quarterly dividends of twenty-five cents per share on the common stock when they are regularly due, to-wit: On December 31st, 1928, and March 31st, 1929, the said dividends on the common stock being reserved by and payable to the present stockholders.

That you will furnish me with abstracts of title showing good and valid title to all real estate and counsels' opinion satisfactory to my counsel that the Company is duly and legally organized and that its franchises are legal and regular, that there are no suits or actions pending against the Company, that the shares will be regularly issued, endorsed and stamped for transfer with signatures guaranteed by some bank or banker satisfactory to me.

That all tax liabilities for years prior to 1929, properly due and payable, including Federal taxes, have been paid or reserved to the correct amount, and you severally bind yourselves to indemnify me against further tax assessments for said period.

That you will, on five days' notice deliver to the escrow agent, on my order, all the shares that you propose herein to sell to me and that you will permit my engineers and accountants to make such examination of the books and records of the Company as we deem advisable during your regular business hours, and that you will assist me in all reasonable ways in securing such information as I require.

You will agree to pay the escrow agent such fees as it may charge for services rendered herein.

Under the terms and conditions of this proposal you represent that the Fayette Home Telephone Company owns three (3) shares of the capital stock of the Woodford Telephone Company, and that the stockholders of the Fayette Company own all the balance of the outstanding capital stock of the Woodford Company (there being no other classes of stock in said Woodford Company except common), and that you will deposit as part of the delivery of the Fayette stock, and without additional cost to me, the same proportion of the total number of shares of Woodford Company outstanding as the number of shares of the Fayette Company purchased by me bears to the total number of shares of Common stock of the Fayette Company now outstanding.

Furthermore, you represent that the Fayette Company now owns or controls five hundred (500) shares of the capital stock of the Jessamine Telephone &

Telegraph Company out of the seven hundred and forty-four (744) total shares outstanding in said Company (there being no other classes of stock in said Jessamine Company except common), and will endeavor to purchase at par from the Southern Bell Telephone & Telegraph Company one hundred and seventy-five (175) shares of said Jessamine stock now owned by it, and that these five hundred (500) shares (and the additional one hundred and seventy-five (175) shares if purchased) will be retained by the Fayette Company and be part of its assets at the time of the completion of the purchase by me of said Fayette Company's stock as herein provided.

It is agreed that you may accept this proposal and confirm sale on terms stated by affixing your signature hereunder with the number of shares you will deliver to me, and that each of the assenting stockholders who may wish to become parties to this agreement may likewise sign and state the number of shares to be delivered. No subscriber is to be liable for any of the obligations of any other subscriber, but merely binds himself to sell and deliver the number of shares specified by him at the price and on the terms and conditions herein specified.

In the event the holders of at least 67 per cent of the outstanding Common stock of the Fayette Home Telephone Company shall not assent to or accept this proposal on or before December 27, 1928, I am to have the right to purchase at the price, on the terms, and at the time herein set forth the stock of the subscribers hereto, or to decline to purchase any of said stock, provided I shall notify you in writing on or before December 31, 1928, of my election to purchase or not to purchase.

Assent of shareholders to said proposal may be evidenced by their signatures to this or to any one or any number of copies of this proposal.

Respectfully yours,

S. E. Stern.

The undersigned holders of the number of shares of the Common stock of the Fayette Home Telephone Company set opposite their respective names hereby assent to and accept the above proposal and agree to deliver the number of shares set opposite their names respectively, on the terms and conditions above specified.

Number of Shares

[Signed] Southern Bell Telephone & Telegraph Co_____ 21,620
12/17/1928 by Ben S. Read,
                          President.
Attest: George J. Yundt,
                          Secretary.

[seal]

The Fayette Co. purchased at par from the Southern Bell Co. the 175 shares of the Jessamine Telephone & Telegraph Co. (hereinafter called the Jessamine Co.). On December 31, 1928, S. E. Stern deposited or caused to be deposited with the Security Trust Co., as escrow agent, the sum of $100,000 as evidence of good faith and as part of the purchase price of the Fayette Co. and Woodford Co., to be held in escrow for the account of the depositing stockholders. Previous to making such deposit Stern had assigned one-half of his contract and had given an option on the other half, which option was exercised prior to March 23, 1929.

Upon notice from Stern, the holders of 100,920 shares of the Fayette Co. stock and 9,973 shares of the Woodford Co. stock delivered such stock to the escrow agent, properly endorsed, and appropriate receipts were issued by the escrow agent to the Southern Bell Co. and the other stockholders. At all times from December 26, 1928, to March 28, 1929, more than 67 percent of the Fayette Co. stock and the requisite amount of the Woodford Co. stock were held by and in possession of the escrow agent. On February 6, 1929, the Fayette Co. stockholders furnished to Stern counsel's opinion and abstracts of title covering the properties of the Fayette Co. and showing any pending litigation and undisclosed contingent contracts.

The quarterly dividends payable December 31, 1928, and March 31, 1929, were reserved by and payable to the stockholders who had deposited the 100,920 shares in escrow. To cover its fees and expenses the escrow agent withheld 75 cents per share. On December 29, 1928, Stern assigned a one-half interest in his contracts of purchase to G. W. Thompson and his associates and thereafter, but prior to March 23, 1929, he assigned his remaining one-half interest therein to Thompson and his associates and authorized that the stock be delivered to them. Such assignment included all of his interest in the $100,000 deposited on December 31, 1928. George R. Hunt and C. N. Manning were informed of the said assignment during the latter part of January 1929, but were not furnished written evidence thereof until March 23, 1929.

Between the date of the acceptance of Stern's offer by more than 67 percent of the Fayette Co. stockholders, and March 20, 1929, Thompson and his associates had an appraisal of the assets of the Fayette, the Woodford, and the Jessamine companies made by engineers. That appraisal was "as of March 20, 1929" and showed a present value of $3,719,944. The Fayette Co. stockholders knew of the appraisal but did not ascertain its amount.

Prior to February 28, 1929, Thompson and his associates organized the Lexington Telephone Co., a Delaware corporation (hereinafter called the Lexington Co.). By letter of February 22, 1929, the attorneys for Thompson and his associates informed the attorneys for the Fayette Co. that the Lexington Co. had been so organized and stated that the Fayette Co. assets were to be transferred to it. By letter of February 25, 1929, the attorneys for the Fayette Co. replied, stating that they assumed from the letter of February 22, 1929, that it was the plan of Thompson and his associates to have the Lexington Co. purchase the stock of the Fayette Co. By letter of March 14, 1929, the attorneys for Thompson and his associates again informed the attorneys for the Fayette Co. that the assets of the latter company were to be transferred to the former company.

On March 18, 1929, the attorneys for Thompson and his associates in Lexington, Kentucky, personally submitted to George R. Hunt and C. N. Manning, directors of the Fayette Co., a proposed draft of minutes of meetings of the Fayette Co. directors and stockholders to be held on March 20 and 25, 1929, respectively, providing for the sale of the Fayette Co.'s assets and business to Thompson and his associates. Hunt and Manning declined to consider such a proposition or to submit the proposed minutes to the directors or stock-holders of the Fayette Co. and, consequently, such minutes were not submitted or voted upon by the directors or the stockholders of that company. Manning refused to consider the proposed minutes because they provided for a sale of the Fayette Co. assets instead of the Fayette Co. stock, as provided in the contracts between Stern and the stockholders owning 100,920 shares of the Fayette Co. stock and because he had no authority to vary the terms of those contracts. He further asserted that a sale of assets as proposed would probably involve both the Fayette Co. and its stockholders in a Federal income tax liability.

By a letter dated March 19, 1929, the attorneys for Thompson and his associates informed the attorneys for the Fayette Co. that they had conferred with tax experts to avoid any possible income tax liability against the Fayette Co. and were advised by tax counsel to transfer the Fayette Co. assets to the Lexington Co. through a liquidating trustee instead of directly, stating that "the end accomplished would be the same." The attorneys for Thompson and his associates thereupon employed the Security Trust Co. as their agent to act as liquidating trustee of the Fayette Co. in carrying out their plans. A revised draft of the proposed minutes was inclosed in the letter of March 19, 1929, and reflected the action taken by the directors of the Fayette Co. at the meeting held March 20, 1929. The minutes of the meeting held on that day record that it was called to consider and act upon:

1. A proposal to sell all of the real and personal property, assets, franchises and good will of the corporation;

2. A proposed redemption of the First Mortgage Twenty-Year Gold Bonds secured by lien upon the property of the corporation;

3. The matter of dissolution of the corporation in the event of the sale of its property and assets.

On March 25, 1929, the Fayette Co. stockholders passed the resolutions contained in the proposed minutes brought to Lexington, Kentucky, on that date by the attorneys for Thompson and his associates. Such directors' and stockholders' meetings were held and the resolutions recorded therein passed at the earnest request of Thompson and his associates in order to enable them to carry out

their plans. The resolutions as ratified by its stockholders at the meeting of March 25, 1929, in part, read:

Whereas, the common stockholders of the Company have agreed to sell their stock at and for the price of $30 per share and the purchasers thereof have caused to be organized Lexington Telephone Company, a Delaware Corporation, for the purpose of acquiring all the assets, good will, franchises and other properties of this Company; and,

Whereas, in order to effect such acquisition it is advisable and for the best interests of the Company that Security Trust Company, of Lexington, Kentucky, be made liquidating trustee of the Company for the purpose of receiving the purchase price of said common stock for the benefit of the common stockholders of the Company at the rate of $30 per share, and to distribute the same to the common stockholders, and of receiving payment for and to retire the preferred stock of the Company at par, plus accrued dividends, and to retire the bonds of the Company, and for that purpose that the assets of the Company be conveyed to said liquidating trustee, or its nominee, and thereafter conveyed by said liquidating trustee to Lexington Telephone Company, a Delaware corporation; and,

Whereas, the Board of Directors of the Company, at a meeting duly convened and held according to law and the By-laws of the Company at the office of the Company on the 20th day of March 1929, by resolutions duly made, seconded and unanimously carried, considered it for the best interest of the Company and of its stockholders that all of its property and assets, including its good will and its corporate franchises, be conveyed to Security Trust Company, of Lexington, Kentucky, as liquidating trustee, and authorized and directed the proper officers of the Company to convey said property and assets for the foregoing purposes:

Now, Therefore, Be it Resolved that the action of the Board of Directors of the Company taken at its meeting held on the 20th day of March, 1929, be, and the same hereby is, authorized by the stockholders of the Company, and

Be it Further Resolved that the proper officers of the Company be, and they hereby are, authorized and directed to execute all such documents of assignment, transfer and conveyance and perform such other acts as may be necessary or proper to convey the property and assets of the Company to Security Trust Company, a corporation organized under the laws of the State of Kentucky, as liquidating trustee, or to its nominee, to be transferred and assigned by it to Lexington Telephone Company, a Delaware corporation, upon receipt of the following sums by said Trustee, to be applied by it for the following purposes:

(a) To retire and call $300,000 First Mortgage 7% Bonds of the
    Company at 110_____ $330,000.00
    Interest at 7% to August 1, 1929_____ 10,500.00
(b) To retire and call $50,000 First Mortgage 6½% Bonds at 110_ 55,000.00
    Interest at 6½% to August 1, 1929_____ 1,625.00
(c) To pay on liquidation $100. per share on 3000 shares of the
    Company's preferred stock_____ 300,000.00
    Quarterly dividend to July 1, 1929_____ 4,500.00
(d) To pay to the common shareholders the price of $30 per
    share for each share of stock issued and outstanding and
    owned by them;

and upon said Lexington Telephone Company assuming and agreeing to pay all current debts and obligations of Fayette Home Telephone Company as set

forth on the books of account of the Company, and to pay all taxes upon the property of the Company or the transfer thereof as herein provided:

Be it Further Resolved that the Board of Directors and/or officers of the Company be, and they hereby are, authorized and directed to take such steps and perform such acts as may be necessary or expedient to carry out the intent of the proceedings had by the Board of Directors as aforesaid and by this meeting of the stockholders of the Company, and to perform all such acts and execute and deliver all such documents as will effectually vest good title in and to all the assets of this Company in Lexington Telephone Company, a Delaware corporation.

All the petitioners except Karoline E. Gund were present at the stockholders' meeting of March 25, 1929. At the board of directors' meeting of March 20, 1929, the redemption of the first mortgage 20-year gold bonds of the company was authorized upon the consummation of the sale and transfer and also, upon such sale, the dissolution of the company was ordered.

March 26, 1929, the Fayette Co., for a nominal consideration, executed a deed to all its properties to the Security Trust Co. as liquidating trustee, and placed it in the hands of George R. Hunt, as its attorney. On March 26, 1929, the Security Trust Co., as liquidating trustee, at the request of Thompson and associates executed a deed to the properties then owned by the Fayette Co., including the 675 shares of the stock of the Jessamine Telephone & Telegraph Co., to the Lexington Telephone Co., and placed it in the hands of George R. Hunt as attorney for the said liquidating trustee. A deed releasing the mortgage on the assets of the Fayette Co. securing its bonds was executed by the trustee thereunder and placed in the hands of George R. Hunt, as attorney for said trustee. On March 26, 1929, the Lexington Telephone Co. executed a trust deed conveying all of its property to the Continental-Illinois Bank & Trust Co. to secure its 15-year 6 percent bonds in the sum of $2,500,000 and placed it in the hands of George R. Hunt as attorney for Thompson and associates.

Prior to February 28, 1929, Thompson and associates organized the Lexington Telephone Co., with a capital structure of $2,500,000 first mortgage 15-year 6 percent gold bonds, series 1929, $1,000,000 2-year 5½ percent convertible gold notes, $1,100,000 6½ percent cumulative prior preferred stock, $500,000 6½ percent cumulative preferred stock, and 20,000 shares of no par value common stock. On February 28, 1929, the Lexington Telephone Co., at its first meeting, accepted the offer of Thompson and associates, dated February 27, 1929, to exchange the assets then owned by the Fayette Co. for said securities of the Lexington Telephone Co., except the $1,100,000 6½ percent cumulative prior preferred stock. The mortgagee, Continental-Illinois Bank & Trust Co., required, as a condition precedent to the issuance and delivery of the bonds of $2,500,000,

that the Lexington Telephone Co. acquire clear title to the properties of the Fayette Co., and that the said deed of trust be filed of record.

The release of the mortgage securing the Fayette Co. bonds, the deed from the Fayette Co. to the liquidating trustee, and the deed from the liquidating trustee to the Lexington Telephone Co., held by George R. Hunt, in the capacities mentioned, were to be by him released and filed for record upon notice from Charles N. Manning so to do, and the trust deed from the Lexington Telephone Co. to the Continental-Illinois Bank & Trust Co., held by George R. Hunt as aforesaid, was to be by him released and filed for record immediately after the release and deeds had been released by him and filed for record. On March 26, 1929, the Security Trust Co. transmitted to the Harris Trust & Savings Bank, Chicago, Illinois, stock certificates for the 100,920 shares of Fayette Co. and 9,973 shares of Woodford Co., for the purpose of permitting inspection thereof by Thompson and associates, and to be held subject to its order or the order of C. N. Manning.

The transactions were consummated March 28, 1929, at a meeting held in Chicago, Illinois, by representatives of the Harris Trust & Savings Bank, Chicago, Illinois, as agent of the Security Trust Co., Charles N. Manning, president of the Security Trust Co., representatives of the Continental-Illinois Bank & Trust Co., and G. W. Thompson, president of G. W. Thompson & Co., in the following sequence:

(1) Continental-Illinois Bank and Trust Company made a temporary loan of $3,622,200 to G. W. Thompson and Company, Inc., on their collateral form note.

(2) G. W. Thompson and Company, Inc., drew a check, payable to the Security Trust Company, against the above sum for $3,622,200, which was certified by the Continental-Illinois Bank and Trust Company and held by its said representatives.

(3) The president of Security Trust Company, Charles N. Manning, delivered to G. W. Thompson, certificates properly endorsed in blank, with revenue stamps affixed, for the 100,920 shares of Fayette Company common stock and 9,973 shares of Woodford Company stock. G. W. Thompson received the said certified check for the $3,622,200 from the representative of the Continental-Illinois Bank and Trust Company, and delivered it to said Charles N. Manning, and the stock certificates were held by the representative of the Continental-Illinois Bank and Trust Company as collateral security for the said temporary loan of $3,622,200.

(4) C. N. Manning deposited the check, immediately upon the receipt to the credit of the Security Trust Company, in the Harris Trust and Savings Bank, Chicago, Illinois, and also immediately made call loans of the greater portion thereof at the rate of approximately 15 per cent, which prior to disbursement of said funds by the said Security Trust Company, earned interest in excess of $5,000.

(5) C. N. Manning, after receipt of the check for $3,622,200, telegraphed and telephoned George R. Hunt at Lexington, Kentucky, to release and file for

record the title instruments, which George R. Hunt did immediately upon his being so notified, and in the following sequence:

First: The release of mortgage securing Fayette Company bonds.

Second: Deed from Fayette Company to Security Trust Company, as liquidating trustee.

Third: Deed from Security Trust Company, as liquidating trustee, to Lexington Telephone Company.

Fourth: Trust deed from Lexington Telephone Company to the Continental-Illinois Bank and Trust Company.

(6) Immediately after releasing and filing for record the aforesaid title instruments, George R. Hunt advised the Continental-Illinois Bank and Trust Company thereof by telegraph.

(7) Upon receipt of the telegram from George R. Hunt, the Continental-Illinois Bank and Trust Company delivered the bonds, notes, and preferred and common stocks of Lexington Telephone Company to G. W. Thompson and Company, Inc. who apportioned them to itself and its associates, and simultaneously Thompson and associates paid the temporary loan of $3,622,200, with money borrowed from the Continental-Illinois Bank and Trust Company on their collateral form notes, secured by trust receipts on bonds and notes of Lexington Telephone Company, and other securities.

The rates for call money were high, and the Continental-Illinois Bank & Trust Co. required, as a condition to making the temporary loan of the $3,622,200 to G. W. Thompson & Co., that the transactions should take place as nearly simultaneously as possible and in the designated sequence, and the said transactions from the delivery by C. N. Manning to G. W. Thompson of the certificates for the 100,920 shares of Fayette Co. stock, and the 9,973 shares of Woodford Co. stock up to and including the delivery of the trust receipts to the Continental-Illinois Bank & Trust Co. by Thompson and associates, were consummated in less than three hours.

Thompson and associates paid their notes secured by the trust receipts with the proceeds from the sale of the securities of the Lexington Telephone Co., contracts for the sale thereof having been made by them prior to March 28, 1929. On March 28, 1929, G. W. Thompson & Co. stamped its name, as assignee, on the certificates for the 100,920 shares of Fayette Co. common stock and delivered them to the Harris Trust & Savings Bank, which forwarded them to the Security Trust Co., transfer agent, and the said transfer agent on April 6, 1929, issued a new certificate to G. W. Thompson & Co. for 100,920 shares of Fayette common stock. The letter, dated March 28, 1929, transmitting such stock certificates of the Fayette Co. from G. W. Thompson & Co. to the Security Trust Co., in part, reads:

We herewith surrender and deliver to you for cancellation upon liquidation of Fayette Home Telephone Company, certificates for 101,240 shares of the common stock of the Fayette Home Telephone Company stock purchased from the former owners thereof by S. E. Stern under a written proposal dated December 15, 1928, addressed to Mr. Charles N. Manning, President of the Security Trust Company, Lexington, Kentucky, which stock and the certificates

evidencing ownership thereof, together with all the rights, benefits and privileges accruing to said Stern by reason of the acceptance of said proposal, the said S. E. Stern by written assignment dated March 23, 1929, sold and assigned to us.

Upon the receipt of the $100,000 paid by S. E. Stern on December 31, 1928, the Security Trust Co. opened an account in its trust ledger designated "Escrow Agreement between S. E. Stern, C. N. Manning, et al.", and entered therein the said $100,000 as a receipt. Upon the receipt of the $3,622,200, paid by G. W. Thompson & Co. on March 28, 1929, the Security Trust Co. entered $2,927,600 thereof in the account, and $694,600 thereof in an account in its trust ledger designated "Liquidating Trustee for Fayette Home Telephone Company."

The $3,722,200 was disbursed as follows:

From account designated "Escrow Agreement between S. E. Stern, C. N. Manning, et al."—
Paid to common stockholders of Fayette Home Telephone Company—100,920 shares deposited with escrow agent at $29.25 ___ $2,951,910.00
Thomas A. Coombs, commission ___ 62,880.14
Hunt and Bush, attorney's fees ___ 500.00
Security Trust Company, commission ___ 10,089.39
Miscellaneous expenses ___ 2,220.47
$3,027,600.00

From account designated "Liquidating Trustee for Fayette Home Telephone Company"—
Paid to holders of Fayette Home Telephone Company common stock not deposited with escrow agent 220 shares common at $29.25 ___ $6,435.00
Retained by Security Trust Company—220 shares common at $0.75 ___ 165.00
Retained by Security Trust Company—100 shares common never surrendered to liquidating trustee at $30.00 ___ 3,000.00
Paid bondholders—
For redemption of $300,000 first mortgage 7% bonds at 110 ___ 330,000.00
For redemption of $50,000 first mortgage 6½% bonds at 110 ___ 55,000.00
Paid preferred stockholders—Redemption of 2,974 shares of 6% preferred stock ___ 297,400.00
Retained by Security Trust Company—26 shares at $100.00 ___ 2,600.00
694,600.00

3,722,200.00

The petitioners herein were paid by the Security Trust Co. out of the account designated "Escrow Agreement between S. E. Stern, C. N. Manning, et al." sums equal to $29.25 per share for each share deliv-

ered by them to the escrow agent under their said contracts with S. E. Stern, as follows:

Southern Bell Telephone & Telegraph Co:

| | |
|---|---|
| For stock held by it direct | $626, 535. 00 |
| For stock held for it by Read and Webb | 5, 850. 00 |
| C. N. Manning | 132, 356. 25 |
| Estelle des Cognets | 100, 035. 00 |
| Karoline E. Gund | 118, 170. 00 |
| Thomas S. Scott | 120, 422. 25 |
| Louis des Cognets (now deceased) | 99, 450. 00 |

In their Federal income tax returns for the year 1929, each petitioner reported therein and paid a tax on the difference between the above stated amounts received and the cost to them of their Fayette Co. stock. The check covering the payment by the Security Trust Co. to the Southern Bell Telephone & Telegraph Co. of the above sum of $626,535 is typical of the checks issued to the other depositors of Fayette Co. common stock with the escrow agent, except the name of the payee and the amount thereof. On July 2, 1929, and at all times thereafter the Fayette Co. had no assets except cash in the amount of $188,372.21, and securities in the amount of $125,000 in the hands of the liquidating trustee.

The directors of the Fayette Co. met April 8, 1929, and reduced the board to five directors, who thereupon passed a resolution to dissolve the Fayette Co., subject to the ratification of the stockholders. The Fayette Co. stockholders met May 6, 1929, and ratified the resolution of the directors to dissolve the Fayette Co. At said stockholders' meeting 101,196 shares of stock were represented, of which the 100,920 shares issued to G. W. Thompson & Co. were voted for it by proxy. On July 2, 1929, the State of Delaware issued a certificate dissolving the Fayette Co., and its 20-year bonds, par $350,000 dated February 1, 1921, which had been called for redemption, were retired, as aforesaid, as of August 1, 1929, with funds from the account designated "Liquidating Trustee of Fayette Home Telephone Company." The unamortized discount on the aforesaid bonds at the time of retirement was $16,153.41, and they were retired at a premium of $35,000.

March 15, 1930, a Federal income tax return was filed for the Fayette Co. with the collector of internal revenue for the district of Kentucky, at Lexington, Kentucky, and did not include any income from the transactions. The Commissioner of Internal Revenue disallowed as a deduction from gross income the bond discount and premium, and on the basis thereof made a jeopardy assessment of $5,557.41, and thereafter on November 17, 1930, by registered mail, he sent the Fayette Co. notice of the said deficiency and the jeopardy assessment. The jeopardy assessment of the said $5,557.41 was made on a list approved November 1, 1930. Thereafter the Commissioner determined that the Fayette Co. sold its assets at a profit to it, in the

period January 1 to March 31, 1929, of $2,282,422.56, and on the basis thereof made a jeopardy assessment against the Fayette Co. of $251,066.48, and thereafter on December 28, 1930, by registered mail, he sent the Fayette Co. notice of the said deficiency and the jeopardy assessment thereof. The jeopardy assessment of the $251,066.48 was made on a list approved December 12, 1930. No petition was filed with the Board by the Fayette Co. from the above determinations. The said assessment lists were duly received by the collector for the district of Kentucky. The deficiencies assessed in jeopardy are still outstanding and unpaid. By notices of deficiency dated February 7, 1933, the Commissioner determined the petitioners herein were transferees of the assets of the Fayette Co., and liable for the deficiency for the year 1929, aggregating the amounts assessed in jeopardy.

The basic issue in the case before us is whether the petitioners sold their stock.

The petitioners contend that the original contract related solely to the sale of the Fayette Co. stock, was consummated exactly as agreed, and was not modified or superseded by any subsequent acts or agreements.

The respondent contends there was a sale of the assets of the Fayette Co. and that petitioners are liable for income taxes on such sale, as transferees.

These are transferee proceedings and, therefore, the burden of proof is on the respondent to establish the liability of the petitioners.

The essential facts may be restated very briefly. The petitioners agreed to dispose of their stock in the Fayette Co. (and proportionate shares in the Woodford Co.) pursuant to a proposal made by S. E. Stern on December 15, 1928, and accepted by the petitioners at various times later, but before March 1, 1929. The stock was to be placed in escrow. Stern agreed to buy the petitioners' stock for $30 per share, less certain escrow charges, and pay for it on or before March 31, 1929. He deposited $100,000 in escrow as evidence of good faith and as a part of the purchase price. Certain assurances of the correctness of balance sheets and the validity of titles were to be furnished by the sellers and other minor details were set forth. In order to make the contract effective, a time limit for securing the assent of 67 percent of the stockholders to the proposal was set at December 31, 1928, but was extended to a later date. With the exception of such time extension, the terms of the original contract were strictly complied with. Over 90 percent of the stockholders became signators thereto and the stock was deposited in escrow. It amounted to all but 320 of the 101,240 outstanding shares. Stern deposited the $100,000 in escrow. He, in the person of his assignees, paid for the stock on March 28, 1929, by means of a temporary loan

made to G. W. Thompson & Co. on their collateral form note. At the same time the escrow agent delivered the stock certificates, properly endorsed in blank, to G. W. Thompson & Co., representing Stern's assignee. Thus, the consummation of the contract was accomplished with no change whatever in its terms or the status of the parties thereto. See *Samuel Keller*, 21 B. T. A. 84; affd., 59 Fed. (2d) 499; *Fred Messerschmidt*, Docket No. 47848, memorandum opinion entered October 4, 1933; appealed by the Government to the Circuit Court of Appeals for the Seventh Circuit and there dismissed on motion of the Government, 69 Fed. (2d) 998. Cf. *Motter* v. *Patterson*, 68 Fed. (2d) 252.

The respondent seeks to inject into the case the methods and means adopted by the assignees of Stern in carrying out their further plans and attempts to impute to the petitioners a complete knowledge of, acquiescence in, and agreement with those measures. He would charge them with the consequent tax burden created by such a situation. We believe his action in so doing is erroneous.

The petitioners proceeded in exact compliance with their agreement with Stern. Thompson and his associates attempted to compel the petitioners to transform the contract into one transferring the assets of the Fayette Co., but Manning and the other petitioners persistently refused to do so.

On March 1, 1929, over 90 percent of the Fayette Co. stockholders, owning almost all of its stock, had become parties to the contract and had divested themselves of the ownership of the stock. The petitioners were among these stockholders. At this time only delivery of the stock and payment therefor by the escrow agent remained to be done. At that time they were the nominal owners of stock and as such acted as directors and officers of the company. Their actions on March 20 and 25, 1929, in passing the resolutions and orders set forth in the record, were directed, controlled and dictated by the purchasers. The petitioners then had no personal interest in such corporate actions. To carry out the plan of securing the money with which to pay the petitioners for the stock, the formal approval of the Fayette Co. officials, then technically and nominally in control of the corporation, was required, but we are not justified in concluding that the official acts of the petitioners secured under such circumstances were their personal acts.

The acts of the petitioners individually and as the officers of the Fayette Co. are comprehended in separate, distinct and unrelated sequences of events. The money which Stern and his assignees needed to complete the contract and pay their obligations under it may have been secured through the organization of the Lexington Co. and the pledging of its assets as collateral security with a bank, but that procedure was no affair of the petitioners. It was con-

ceived, arranged and carried out by Thompson and his associates. The only point of contact between them and the petitioners was the procurement of the petitioners' official actions as directors of the Fayette Co., as we have heretofore noted. Likewise, what Thompson and his associates did with the Fayette Co. after they had bought its stock from the petitioners and thus secured control of it, was of no concern to the petitioners. The record does not convince us that the assets of the Fayette Co. were transferred to the petitioners and by them sold to Stern and his assignees.

The various book entries made by the Security Trust Co. were cited as being persuasive that the Fayette Co.'s assets, rather than its stock, were sold, but we must bear in mind that the Trust Co. acted in several capacities. Its functions and duties were tripartite; it was trustee under the deed of trust securing the Fayette Co.'s bond issue; it was escrow agent under the stock sale agreement; and it was the liquidating trustee under the Thompson plan. Its actions may have overlapped and been somewhat confusing, but do not disturb the fundamental facts.

Respondent relies heavily on *George M. Brady*, 22 B. T. A. 596. The facts in that case are basically different. There the stockholders clearly departed from their plan to sell the stock and made a sale of the assets. Here they adhered rigorously to their original plan.

Since petitioners are not liable as transferees, it is unnecessary to consider the other issues.

*Decisions of no transferee liability will be entered.*