ROBERT OBERY *vs.* WENTWORTH V. LANDER.

Middlesex.   March 21, 1901. — May 23, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Sale*, Indivisible offer, Evidence of acceptance, Passing of title, Delivery.

The plaintiff covenanted to sell and deliver to the defendant the capital stock of a certain company he then owned consisting of two hundred shares and comprising in all $5,000 par value, and "in furtherance of this option" agreed to at once indorse the certificates in blank and deliver them to X. to be by him held in escrow and delivered to the defendant in the following manner: On payment of $1,000 within fifteen days from the date hereof X. to deliver to the defendant forty shares, and on payment of $2,000 within thirty days thereafter eighty shares, and on a further payment of $2,000 within thirty days after the second payment, the remainder of the shares.   "It is understood and agreed that this option expires and becomes null and void if not accepted within fifteen days and in that event X. is to immediately return to me said certificates delivered to him in escrow."   The defendant paid the first $1,000 and received the stock for it and afterwards refused to make further payments.   There was evidence that the defendant said to the plaintiff's attorney "that he would not be forced to pay for the certificates; that he would pay for them when he got good and ready."   *Held*, that the offer was an indivisible one to sell the whole lot of two hundred shares, and that there was evidence of its acceptance.   Even if the defendant could make a payment and receive stock under the offer without

accepting it, his statement to the plaintiff's attorney might be found to imply an admission that he bought the stock. *Held, also,* that evidence of the market value of the shares, offered by the defendant to show that there was little change of value from the contract price, rightly was excluded, as the action was not for the breach of an executory contract but for goods bargained and sold and this action would lie. *Semble,* that even an action for goods sold and delivered might lie.

CONTRACT to recover $4,000, the balance of the agreed price for two hundred shares of stock of the Mercer Cell Company alleged to have been purchased from the plaintiff by the defendant. Writ dated October 23, 1899.

At the trial in the Superior Court, before *Gaskill*, J., it appeared that the plaintiff signed in duplicate the following agreement under seal:

" In consideration of one dollar and other valuable considerations to me in hand paid by W. V. Lander of Rumford Falls, Maine, I hereby offer to sell and deliver on demand to said Lander the capital stock of the Mercer Cell Company I now own, consisting of two hundred shares and represented by certificates numbered 30, 31, 32, 33 and 34 respectively, and comprising in all five thousand dollars par value. And in furtherance of this option I hereby agree to at once indorse said certificates in blank and deliver the same to George D. Bisbee of Rumford Falls, Maine, to be by him held in escrow and delivered to said Lander in manner and condition following :       ·

" On payment by said Lander of one thousand dollars ($1,000) within fifteen days from the date hereof, said Bisbee is to deliver to said Lander or his legal representatives forty shares, and on payment of two thousand (2,000) dollars within thirty days thereafter, said Bisbee is to deliver eighty shares, and on a further payment of two thousand (2,000) dollars within thirty days after the second payment, said Bisbee shall deliver the balance of said shares. Said Bisbee to remit to me by cashier's check · the amount received from said Lander, as above, from time to time.

" It is understood and agreed that this option expires and becomes null and void if not accepted within fifteen days and in that event said Bisbee is to immediately return to me said certificates delivered to him in escrow.

" It is further agreed and understood that certain other shares

not exceeding five hundred dollars ($500) par value of which I am the owner, but title to which may be disputed by other parties, shall come within this option and as soon as a proper transfer can be made the same shall be transferred to said Lander, and in that event said Lander shall pay me a further payment of twenty-five dollars ($25.00) for each share so transferred. It is the meaning and intention of this option that I am to receive twenty-five dollars ($25.00) for each and every share transferred, and it is agreed and understood that in the event of any adjustment between myself and the other present stockholders in which adjustment I may transfer shares to other said present stockholders, this option shall not cover any stocks so transferred.

"In witness whereof I have hereunto set my hand and seal this second day of August, A. D. 1899."

One of the duplicate originals of this agreement was sent to the defendant in Maine and the other was sent to Bisbee, named in the agreement, together with the certificates of stock indorsed in blank by the plaintiff in accordance with the terms of the agreement. On August 22, 1899, Bisbee sent to the plaintiff Lander's check for $1,000 in the following letter: "I hand you herewith Wentworth V. Lander's check duly certified for one thousand dollars, in payment of the first instalment of 40 shares of capital stock Mercer Cell Co. I should have sent it several days ago as it was in my hands."

Mr. Irwin, attorney for the plaintiff, testified that on September 6, 1899, he mailed to Bisbee the following letter: "Several weeks ago I forwarded you certificates No. 30, 31, 32, 33 and 34, being (in the total) 200 shares of the capital stock of the Mercer Cell Company, together with an option to W. V. Lander for the purchase of the same. The time within which the said option was to be accepted expired some time since. My client, Mr. Robert Obery, owner of the stock, left word at my office several days ago asking me to write for the return of the certificates, but I have been away on a vacation and have but just returned here. In view of this delay on my part I ask that you will be good enough to send me the certificates by return mail, as my client has an opportunity to sell the stock at this time. Kindly send the certificates by registered mail, and oblige, very truly yours, J. J. Irwin."

Mr. Irwin further testified as follows : " Mr. Bisbee never returned the stock certificates. As the result of the correspondence between Mr. Bisbee and myself I called at the defendant's office in Boston some time in October, 1899. I told the defendant that I had received the first payment in accordance with the terms of the contract, for the plaintiff; that I had turned the same over to the plaintiff and that the second payment was now past due, and I wanted to know whether he was going to pay, or not. I told him that I had reason to believe that at the meeting of the stockholders of the Mercer Cell Company, held in the meantime, that he had voted on this stock that is recited in the option and I asked him to show me the stock certificate book and he refused to do so, stating that he did not have it. I told him that I had a letter, which I think I produced from my pocket at the time and read from the letter in which Mr. Bisbee advised me that the stock certificate book was in the hands of the defendant; the defendant hesitated, when I showed him the letter, and then said that he had just sent the book back. I read the following portion of the letter to the defendant: 'Mr. Lander is treasurer and has the stock book. I have again written him and asked him to examine and see what certificates Mr. Obery had and what record he has of them. His office is room 504, John Hancock Bldg., Boston.'

" We had further conversation respecting one of the certificates of stock. I cannot say which certificate, it was probably 31 or 32. I told the defendant that he must have (from the information that I had from Mr. Bisbee) two of these certificates of stock. He had paid for one. I also stated that I had been in correspondence with Mr. Bisbee respecting the matter and that he must have this second certificate of stock, and he denied having it and said he had received but one from Mr. Bisbee, and that he did not have the second one ; that he would not be forced to pay for the certificates ; that he would pay for them when he got good and ready."

The defendant admitted that $1,000 had been paid by him.

Sewall A. Dinsmore, a witness for the plaintiff, on cross-examination testified that the contract price of the stock, $25 per share, was supposed to be a fair value for the stock at that time. He was then asked the two following questions which

were objected to by the plaintiff and excluded by the judge, the defendant excepting: " Now what was it worth here in the market two months after that time?" and "Was there any change in value?" The defendant's counsel stated that he offered this evidence on the ground that, if the plaintiff should be entitled to recover anything, he would be entitled to recover only the difference between the market value here and the contract value. The judge then said: " He does not sue to recover for a breach of the contract at all, as I recall it, in his declaration, except as far as there was a breach of the payment of the specific sum agreed to be paid. So it is either that, or nothing, is it not?" This was assented to by the plaintiff's counsel.

At the close of the evidence, the defendant asked the judge to instruct the jury to bring in a verdict for the defendant on the ground that there was no evidence for a jury to consider of the acceptance of the option by the defendant. The judge refused to give this instruction but left to the jury, by consent of parties, the single question whether or not there had been an acceptance of the option by the defendant, or some one expressly authorized for that purpose; the defendant by his counsel not waiving his exception to the refusal of the court to direct a verdict for him.

The jury returned a verdict for the plaintiff in the sum of $4,240; and the defendant alleged exceptions to the ruling of the judge excluding the questions to show the market value of the stock, and to his refusal to instruct the jury to bring in a verdict for the defendant.

*J. W. Spaulding,* for the defendant.

*S. A. Fuller,* (*J. J. Irwin* with him,) for the plaintiff.

HOLMES, C. J. This is an action upon a contract for the purchase of certain stock by the defendant from the plaintiff. The plaintiff covenanted to sell to the defendant on demand " the capital stock of the Mercer Cell Company I now own, consisting of two hundred shares," and at once to indorse and deliver the same to one Bisbee, to be held by him in escrow and to be delivered to the defendant, on payment of $1,000 within fifteen days, forty shares; on payment of $2,000 within thirty days thereafter, eighty shares; and on payment of $2,000 within thirty days after the second payment, the remainder of the

shares. It was stipulated that "this option expires . . . if not accepted within fifteen days." The stock was indorsed and delivered to Bisbee at once. At the trial the defendant excepted to a refusal to rule that there was no evidence that the defendant had agreed to purchase the shares. The defendant also excepted to the exclusion of evidence of the market value of the stock.

As to evidence of the defendant's acceptance of the offer contained in the plaintiff's covenant, it would seem to be enough that the defendant paid the first thousand dollars and received the stock for it. The defendant argues, to be sure, that this was not an acceptance of the whole offer, on the ground that the offer was of three several sales, and also that the requirement that the option should be accepted within fifteen days shows that acceptance and the first payment were different things. We think it so plain that there was but one offer of the whole lot of two hundred shares, although to be paid for and delivered in parcels, that we shall spend no argument upon the matter. *Barrie* v. *Earle*, 143 Mass. 1. We think it equally plain that the requirement as to acceptance is merely an emphasizing of the necessity for action within the time named, and that it does not imply that the defendant could make a payment and receive stock under the offer without accepting it. If, however, it were necessary to go further, the defendant's statement to the plaintiff's attorney "that he would not be forced to pay for the certificates; that he would pay for them when he got good and ready," implied an admission that he had bought the stock, or at least might be found to imply it. It is unnecessary to consider the acts of the defendant's agent, which also showed an agreement to take the stock.

The other exception goes on the footing that this is an action for damages for breach of an executory contract to purchase. We understand the declaration to be not for damages but for the price. But, whatever may be the true construction, the judge having intimated that he took it so and the plaintiff's counsel having assented to the interpretation, we must assume that the case went to the jury on that footing, and no wrong was done to the defendant if on the facts such an action could be maintained. Such an action could be maintained because

the plaintiff had done all that there was to be done by him under his contract, and had put the stock into an adverse hand. All that the defendant had to do to get a delivery of the stock was to pay as he had agreed. *Frazier* v. *Simmons*, 139 Mass. 531. The decisions in this Commonwealth have gone very far in support of an action even for goods sold and delivered. *Nichols* v. *Morse*, 100 Mass. 523. *Rodman* v. *Guilford*, 112 Mass. 405, 407. *McLean* v. *Richardson*, 127 Mass. 339, 345.

*Exceptions overruled.*