COMMISSIONER OF INTERNAL REVE-
NUE v. SOUTHERN BELL TELE-
PHONE & TELEGRAPH CO.

SAME v. SPRINGATE et al.

Nos. 7699, 7704.

Circuit Court of Appeals, Sixth Circuit.

March 7, 1939.

Berryman Green, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Berryman Green, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Claude M. Houchins, of Washington, D. C., and George R. Hunt, of Lexington, Ky. (Claude M. Houchins, of Washington, D. C., John T. Goree, of Atlanta, Ga., and George R. Hunt, James R. Bush, and Rufus Lisle, all of Lexington, Ky., on the brief), for respondents.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

Petitions by the Commissioner of Internal Revenue to review orders of the United States Board of Tax Appeals redetermining and disallowing a transferee tax of $256,623.89 of the respondents, by reason of their being transferees of the Fayette Home Telephone Company, a dissolved Delaware corporation. 34 B.T.A. 540.

The single question for decision is whether under the Revenue Act of 1928, Chap. 852, 45 Stat. 791, the respondents as stockholders of the Fayette Home Telephone Company are transferees of its assets and as such liable for taxes due from it accrued before dissolution.

The Fayette Home Telephone Company was a Delaware corporation doing business as a public utility in the operation of a local and long distance telephone exchange in Fayette County, Kentucky, and at all times from December 15, 1928, to March 28, 1929, had outstanding 101,240 shares of common stock and 3,000 shares of preferred. It also owed $300,000 par value, seven percent bonds and $50,000 par value 6½% bonds, secured by a lien on its properties.

Previous to February, 1928, it had acquired all of the capital stock of the Woodford Telephone Company, another public utility, consisting of 10,000 shares of common and in February, 1928, it distributed this stock to its stockholders as a dividend.

On December 15, 1928, S. E. Stern made a written offer to the stockholders of the Fayette Home Telephone Company to purchase their stock at $30 per share, which included the Woodford stock, with the usual provisions in the offer as to the validity of the corporation's title to its assets, guaranty of the correctness of the balance sheet and income statements made a part of the offer, freedom of the company from concealed liabilities and written acceptance of the offer and deposit of the stock in escrow prior to December 27, 1928, the entire purchase price to be paid on or before March 31, 1929.

The Fayette Company owned 500 shares of the capital stock of the Jessamine Telephone & Telegraph Company, the Southern Bell Telephone & Telegraph Company owned the remaining 175 shares and pending the payment of the purchase price the Fayette Company was authorized to acquire these shares at par and to pay the usual dividend on its preferred stock and a dividend of 25 cents a share on its common stock. No other indebtedness, except in the ordinary course of business, was to be incurred by the Company.

The offer of Stern was accepted in writing before December 27, 1928, by stockholders holding approximately ninety percent of the stock which was more than the minimum shares required under his offer. The certificates were indorsed in blank but not transferred on the books of the Company and deposited with the Security Trust Company, escrow agent, as provided in the contract, and on December 31, 1928, Stern closed his offer to buy and deposited with the Security Trust Company, Lexington, Kentucky, trustee, $100,000 as provided under his offer to be applied on the purchase price, otherwise to be forfeited to the stockholders, if the remainder was not paid.

On December 29, 1928, Stern assigned an undivided one-half interest in his purchase contract to G. W. Thompson and associates and before March 23, 1929, as-

signed the remainder. Agents for the selling stockholders were advised of the assignments when made.

Prior to February 28, 1929, Thompson and his associates caused to be organized under the laws of Delaware, the Lexington Telephone Company and by letter of February 22, 1929, advised the attorneys for the Fayette that the Lexington had been so organized and stated that the assets of the Fayette were to be transferred to the Lexington and by letter of February 25, 1929, the attorneys for the Fayette replied, stating that they assumed from the letter that it was the plan of Thompson and his associates to have the Lexington acquire the stock of the Fayette. By letter of March 14, 1929, the attorneys for Thompson and his associates again informed the attorneys for the Fayette that the assets of the latter Company were to be transferred to the former.

On March 18, 1929, attorneys for Thompson and his associates submitted to two of the directors of the Fayette Company, proposed draft of minutes of meetings of the directors and stockholders of that Company to be held on March 20 and 25, 1929, providing for the sale of its assets and business to Thompson and associates. The two directors declined to consider the proposition or to submit the proposed minutes to the other directors and stockholders. They stated their reasons to be that they provided for a sale of the Company's assets instead of the stock as reflected in the contracts between Stern and the stockholders owning 100,920 shares, and a lack of authority to vary the terms and also that such a sale would probably result in the Company and its stockholders becoming liable for income taxes.

On March 19, 1929, by letter, attorneys for Thompson and his associates advised the attorneys for the Fayette Company that they had conferred with and were advised by tax counsel to transfer the Fayette Company assets to the Lexington Company through a liquidating trustee. Thompson and his associates then employed the Security Trust Company as their agent to act as liquidating trustee of the Fayette for the purpose of carrying out the plan. A revised draft of proposed minutes, reflecting the action to be taken on March 20, 1929, was inclosed in the letter and recorded that the meeting was called to consider and act upon:

1. A proposal to sell all of the real and personal property, assets, franchises and good will of the corporation;

2. A proposed redemption of the First Mortgage Twenty-Year Gold Bonds secured by lien upon the property of the corporation;

3. The matter of dissolution of the corporation in the event of the sale of its property and assets.

On March 25, 1929, the Fayette Company stockholders who had theretofore sold their stock, met at the direction of Thompson and associates and passed the resolutions in the minutes proposed by them, in order to carry out their plans the proponent parts of which, after the preliminary recitation of facts as to the sale of the stock to Stern and his assignees, are as follows:

"Be it Further Resolved that the proper officers of the Company be, and they hereby are, authorized and directed to execute all such documents of assignment, transfer and conveyance and perform such other acts as may be necessary or proper to convey the property and assets of the Company to Security Trust Company, a corporation organized under the laws of the State of Kentucky, as liquidating trustee, or to its nominee, to be transferred and assigned by it to Lexington Telephone Company, a Delaware corporation, upon receipt of the following sums by said Trustee, to be applied by it for the following purposes:

(a) To retire and call $300,000 First Mortgage 7% Bonds of the Company at 110.... $300,000.00
Interest at 7% to August 1, 1929 ........ 10,500.00

(b) To retire and call $50,000 First Mortgage 6½% Bonds at 110 ........ 55,000.00
Interest at 6½% to August 1, 1929 ........ 1,625.00

(c) To pay on liquidation $100.00 per share on 3,000 shares of the Company's preferred stock ........ 300,000.00
Quarterly dividend to July 1, 1929 ........ 4,500.00

(d) To pay to the common shareholders the price of $30.00 per share for each share of stock issued and outstanding and owned by them;

and upon said Lexington Telephone Company assuming and agreeing to pay all current debts and obligations of Fayette Home Telephone Company as set forth on the books of account of the Company, and to pay all taxes upon the property of the Company or the transfer thereof as herein provided:

"Be it Further Resolved that the Board of Directors and/or officers of the Company be, and they hereby are, authorized and directed to take such steps and perform such acts as may be necessary or expedient to carry out the intent of the proceedings had by the Board of Directors as aforesaid and by this meeting of the stockholders of the Company, and to perform all such acts and execute and deliver all such documents as will effectually vest good title in and to all the assets of this Company in Lexington Telephone Company a Delaware corporation."

All of the stockholders who had theretofore sold their stock, except one, attended the meeting and voted for the resolution. At the Board of Directors meeting of March 20, 1929, the redemption of the first mortgage twenty-year gold bonds of the Company was authorized upon the confirmation of the sale and transfer of the property and also upon such sale the dissolution of the Fayette Company was ordered.

On March 26, 1929, the Fayette Company for a nominal consideration executed a deed transferring all of its properties to the Security Trust Company as liquidating trustee and on the same date the trustee at the written direction of Thompson and his associates executed a deed to all of its property as trustee to the Lexington Telephone Company. Both deeds without recordation were delivered to George R. Hunt, attorney for the Fayette Company and the liquidating trustee and on the same date the trustee of the mortgagee of the Fayette Company executed a deed releasing its lien and without recordation placed it in the hands of Mr. Hunt. On March 26, 1929, the Lexington Telephone Company executed to the Continental-Illinois Bank & Trust Company, Chicago, a trust deed conveying all the property it had received from the Security Trust Company, trustee, to secure its fifteen-year six percent bonds in the sum of $2,500,000, and placed it in the hands of Hunt, without recordation.

The Lexington Telephone Company was authorized to issue and sell $2,500,000, fifteen-year, six percent gold bonds series 1929, $1,000,000, two-year five and one-half percent convertible gold notes, $1,100,000, 6½ percent, cumulative prior preferred stock, $500,000, 6½ percent cumulative preferred stock and 20,000 shares of no par value common stock.

On February 28, 1929, the Lexington Telephone Company at its first corporate meeting accepted in writing an offer from Thompson and his associates dated February 27, 1929, to exchange its corporate bonds and all of its capital stock except the $1,100,000, 6½ percent prior cumulative preferred stock for the assets of the Fayette Company. The muniments of title held by Hunt were to be recorded by him at the direction of the President of the Security Trust Company.

On March 26, 1929, the Trust Company transmitted by mail to the Harris Trust & Savings Bank, Chicago, Illinois, stock certificates indorsed in blank for 100,920 shares of the Fayette Home Telephone Company and 9,973 shares of the Woodford Company for the purpose of inspection by Thompson and associates. On March 28, 1929, the Continental-Illinois Bank & Trust Company made a temporary loan of $3,622,200 to G. W. Thompson and associates, secured by the above shares of stock and deposited the proceeds of the loan to the credit of the borrower and on the same date Thompson and Company drew its certified check payable to the Security Trust Company, Lexington, Kentucky, for the above sum, and delivered it to Charles N. Manning, President of the Security Trust Company, who forthwith deposited it in the Harris Trust & Savings Bank, Chicago, Illinois, to the credit of his bank, and immediately loaned it at call, at approximately fifteen percent.

Manning wired Hunt at Lexington that he had received the money and Hunt immediately filed for recordation with the County Clerk of Fayette County, Kentucky, the deeds, mortgages, and releases in his possession and wired the Continental-Illinois Bank & Trust Company of his acts. The rates for call money were high in Chicago and the Continental-Illinois Bank & Trust Company insisted that all the transactions transferring assets of the Fayette to the Lexington Company should be handled expeditiously. Upon receipt of Hunt's telegram, Thompson & Company paid their note to the Continental-Illinois Bank & Trust Company out of the proceeds

of the sale of the securities of the Lexington Company, which had theretofore been sold, and received from the bank the certificates for 100,920 shares of the Fayette Company stock and the 9,973 shares of the Woodford. Thompson & Company, on March 28, 1929, stamped their names as assignees on the stock certificates of the Fayette and delivered them to the Harris Trust & Savings Bank, Chicago, to be forwarded to the Security Trust Company, transfer agent for the Fayette Company. In the letter of transmittal to the Security, Thompson & Company stated: "We herewith surrender and deliver to you for cancellation upon liquidation of Fayette Home Telephone Company, certificates for 101,240 shares of the common stock of the Fayette Home Telephone Company stock purchased from the former owners thereof by S. E. Stern under a written proposal dated December 15, 1928, addressed to Mr. Charles N. Manning, President of the Security Trust Company, Lexington, Kentucky, which stock and the certificates evidencing ownership thereof, together with all the rights, benefits and privileges accruing to said Stern by reason of the acceptance of said proposal, the said S. E. Stern by written assignment dated March 23, 1929, sold and assigned to us."

On April 6, 1929, the Security issued a new certificate to G. W. Thompson & Company for the 100,920 shares. On April 8, 1929, at a called meeting of the Board of Directors of the Fayette Company, its number was reduced to five and a resolution, subject to the ratification of the stockholders, passed by it to dissolve the Company. On May 6, 1929, at a called meeting of the stockholders at which 101,196 shares were represented, 100,920 being in the name of G. W. Thompson & Company and voted by it by proxy, the action of the Board of Directors authorizing dissolution was ratified.

On July 2, 1929, the State of Delaware issued a certificate dissolving the Fayette Company.

Upon receipt of the $100,000 paid by S. E. Stern on December 31, 1928, the Security Trust Company opened an account on its trust ledger designated "escrow agreement between S. E. Stern, C. N. Manning, et al." and credited therein the said $100,000. Upon receipt of the $3,622,200 paid by G. W. Thompson & Company on March 28, 1929, the Security Trust Company credited $2,927,600 in the Stern account and $694,600 thereof in an account in its trust ledger designated "liquidating trustee for the Fayette Home Telephone Company." It disbursed out of the Stern account $29.25 per share or $2,951,910 on 100,920 shares deposited with it as escrow agent and out of the liquidating trustee account paid out $6,435 or $29.25 a share on 220 shares of common stock which was not deposited with it as escrow agent. Seventy-five cents a share was deducted for commissions and expenses. The remaining sums in the hands of the trustee or escrow agent were paid out in commissions or on the indebtedness of the Fayette Company except $3,000, which was retained representing $30 per share of 100 common shares of the Fayette not surrendered to the liquidating trustee or sold to Stern.

On the foregoing facts the Board found the respondents were not equitable or lawful transferees and the Commissioner seeks a review. Each of the respondents in his respective income tax return for the year 1929 included in income and paid a tax on the difference between the cost of the stock of the Fayette Company and $29.25 per share, the sum received. The Fayette Company timely filed its income tax return for the calendar year 1929 and showed neither loss nor gain by reason of its transfer of assets to the Lexington Company.

 Section 311 of the Revenue Act of 1928, Chap. 852, 45 Stat. 791, 26 U.S.C.A. § 311, imposed no new obligation upon a transferee of property of a corporation but merely permitted, by summary proceeding, collection from him of his existing liabilities in law or equity. The nature and extent of a transferee's liability must be determined by the settled principles of the common law or Federal or local statutes. The following prerequisites must be present before a transferee liability becomes fixed. The transfer of assets must be made after the liability accrues and the transferor must have been liable for the debt and the transferee must have obtained the property under such circumstances as would make him liable either in law or equity. Under Section 602 of the Revenue Act of 1928, Chap. 852, 45 Stat. 872, 873, 26 U.S.C.A. § 619(a), in a proceeding before the Board of Tax Appeals, the burden of proof rests upon the Commissioner to show that a petitioner is liable as transferee of a taxpayer but the

transferee must carry the burden of showing the transferor was not liable for the tax.

The Board in its decision here did not decide the correctness of respondents'·determination of the transferor's liability for the tax, but rested its decision solely on the ground that the respondents were not transferees either in law or equity.

■ The facts here are not in dispute and the Board's ultimate finding is a mixed question of law and fact. Under such circumstances, we are authorized to substitute our judgment for that of the Board. Helvering, Commissioner, v. Tex-Penn Oil Company, 300 U.S. 481, 499, 57 S.Ct. 569, 81 L.Ed. 755; Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343.

[5, 6] A corporation is not a fiction but a creature of the law and "its ownership is a nonconductor that makes it ·impossible to attribute an interest in its property to its members." Klein v. Board of Tax Supervisors, etc., 282 U.S. 19, 24, 51 S.Ct. 15, 16, 75 L.Ed. 140, 73 A.L.R. 679; Donnell v. Herring-Hall-Marvin Safe Company, 208 U.S. 267, 273, 28 S.Ct. 288, 52 L.Ed. 481. The stockholders of the Fayette Home Telephone Company had the unfettered right to sell their stock without the consent of the corporation and a sale by them did not pass title to its assets.

■ Prior to December 27, 1928, the respondents had consummated their contract with Stern to sell their stock at ˙$30 a share and had delivered the certificates indorsed in blank to the Security Trust Company, escrow agent, to be held by it until the remainder of the purchase price was paid, and Stern had deposited with the escrow agent as trustee $100,000 as a forfeit, if the remainder of the purchase was not paid before March 31, 1929. These acts passed equitable title to the stock from the respondents to Stern before December 28, 1928.

. The transfer of the stock on the books of the corporation was unnecessary to pass title. Obery v. Lander, 179 Mass. 125, 60 N.E. 378; Frazier v. Simmons, 139 Mass. 531, 2 N.E. 112; Eavenson v. Commissioner, 3 Cir., 51 F.2d 664; T. W. Warner Co. v. Andrews, 2 Cir., 90 F.2d 965; Ruml v. Commissioner, 2 Cir., 83 F.2d 257; Lawson v. Household Finance Corporation, 17 Del.Ch. 343, 152 A. 723; Ford Motor Company v. Dexter, 2 Cir., 56 F.2d 760; Western Union Telegraph Company v. ˙Brown, Executor, et al., 253 U.S. 101, 113, 40 S.Ct. 460, 64 L.Ed. 803; Johnston v. Laflin, 103 U.S. 800, 806, 26 L.Ed. 532; Dulin v. Commissioner of Internal Revenue, 6 Cir., 70 F.2d 828.

[8, 9] The contract the stockholders made with Stern was for a sale of their stock exclusively. His assignees undertook to bring about another method of acquiring corporate assets by having a direct conveyance to the new corporation but the respondents and their associates did not consent. They had the right to avoid the imposition on them of a corporate tax by refusing to modify their agreement from a sale of stock to a sale of assets. Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of either of the parties to a sale, and substance, rather than mere form, must be followed. Motter, Collector v. Patterson, 10 Cir., 68 F.2d 252. As a general rule, the true owner of stock in a corporation is subject to liability under the trust fund doctrine, although the stock has not been transferred on the books of the corporation, irrespective of how or why it is registered in the name of another party. Brown v. Artman, C.C., 166 F. 485; Pauly v. State Loan & Trust Company, 165 U. S. 606, 624, 17 S.Ct. 465, 41 L.Ed. 844.

■ Under this principle, the respondents, not being stockholders of the Fayette Company at the time of its dissolution and the transfer of its assets to the Lexington Company, could not be held liable as transferees. The fact that the purchasers of their stock procured the moneys out of which they were paid from the sale of the assets of the corporation does not alter the rule.

The respondents and their ˙associates voted at the stockholders' meeting March 25, 1929, at the direction of Thompson & Company who were then at least the equitable owners of the stock, to transfer the assets of the Fayette Company to the Security Trust Company, liquidating trustee, which was in turn to transfer them to the Lexington Company in exchange for its corporate securities. It is insisted by the Commissioner that this was an abandonment of the stockholders' contract to sell shares and a novation into an agreement to liquidate the Fayette Company, which would compel the conclusion that the respondents were transferees.

The respondents, by their contract, had divested themselves of the right to vote as stockholders. A mere option or an executory contract for the sale of stock does not ordinarily deprive the owner of his right to vote it, for the right to vote is an incident to ownership and remains with the legal holder. However, the voting of the shares here in question rested in the equitable owner and he had the right to compel the owner of the naked legal title to vote at his direction. This is clearly the law of Delaware as enunciated in Re Canal Construction Company, Del.Ch. 182 A. 545.

The transferee in the case here was not qualified to vote because the stock was not registered in his name before the twenty-day period next preceding the meeting mentioned as required under Section 17 of the Delaware Corporation Law, Rev.Code Del.1935, § 2049, but he could have required the transferors to deliver to him a proxy or vote the stock as he directed. The old stockholders of the Fayette Company at the meeting March 25, 1925, were acting as proxies or agents for Thompson & Company, the then owners of the stock.

The order of the Board is affirmed.