**Doris HART, a Widow, Appellant,**

**v.**

**L. A. EHLERS, Jr., Sometimes Known as Louis A. Ehlers, Jr., Appellee.**

**No. 13298.**

Court of Civil Appeals of Texas.

Houston.

Dec. 18, 1958.

Appellant's Motion for Rehearing Denied Jan. 8, 1959.

Appellee's Motion for Rehearing Overruled Jan. 8, 1959.

Stein, Bennett & Shepley, Ralph O. Shepley, Houston, for appellant.

Joe H. Reynolds, Houston, Bracewell, Reynolds & Patterson, Houston, of counsel, for appellee.

WOODRUFF, Justice.

Appellant, Doris Hart, brought this suit against appellee, Louis A. Ehlers, Jr., to recover $6,250 and 6% interest from January 7, 1956, alleging that amount to be owing to her on a written contract bearing that date, by the terms of which appellant agreed to sell and appellee agreed to purchase all of appellant's shares of stock consisting of 25,000 shares in a certain corporation for 50 cents per share. She further alleged that she delivered 12,500 shares to appellee upon the execution of the contract, for which she had been paid $6,250, and thereafter she delivered the remaining 12,500 shares to appellee but he has failed and refused to pay her therefor.

Appellee defended on the ground that the contract and an escrow agreement executed by the parties subsequent to the date of the contract accorded to appellee only an option to purchase the stock and therefore he was not obligated to pay for it.

No jury having been requested, all issues of fact as well as of law were determined by the trial court. Appellee was the only witness. At the conclusion of the testimony, the written contract and the escrow agreement were submitted to the court for interpretation and it was held, as evidenced by findings of fact and conclusions of law

filed by the court, (1) the parties to said contract treated it as an option to purchase on the part of appellee, (2) that they were unambiguous, (3) that appellee was not obligated to purchase all of the stock but only the amounts desired by him at 50 cents per share, (4) that no sale was effected until the stock certificates were delivered to appellee, (5) that under the escrow agreement with the First State Bank of Yoakum, Texas, the parties recognize that Ehlers was not required to purchase all of the stock, in which event the stock not so purchased was to be returned to the appellant, Hart, and (6) the evidence was insufficient to establish any damages on the part of appellant. Judgment was accordingly entered that appellant take nothing, to which action of the court appellant duly excepted and perfected her appeal.

Appellant's Point of Error is that the trial court erred in interpreting the contract to be an option to purchase instead of a contract of sale.

The contract originally executed by the parties on January 7, 1956, read as follows:

"State of Texas ⎤ "Know All Men By
"County of Harris ⎦ These Presents:

"This Agreement made and entered into on this, the 7th day of January, A.D.1956, by and between Doris Hart, of Bellaire, Harris County, Texas, and L. A. Ehlers, Jr., of 4608 South Main Street Houston, Harris County, Texas, in his own right and as Trustee for others; and

"Whereas, the said Doris Hart is the owner of certain shares of Common Stock in the Inter American Development Corporation and/or Inter American Investment Corporation, and said Doris Hart desires to sell all of said shares in said companies; and

"Whereas, L. A. Ehlers, Jr., in his own right and as Trustee for other—, desires to purchase all of said shares held by Doris Hart in her own name or in the name of others for her account, or held beneficially by or for her or any other persons:

"Witnesseth

"That, for and in consideration of the sum of Fifty-only (50¢) Cents per share, and the further consideration that all of said shares held by or for Doris Hart, or owned by her in any manner whatsoever, shall be included in the sale herewith of said above-named shares to L. A. Ehlers, Jr., by Doris Hart.

"The Terms of payment shall be Six Thousand Two Hundred Fifty ($6,250.00) Dollars, cash, in hand paid, receipt of which is hereby acknowledged and confessed, on the date of this agreement, which shall represent the full purchase price of Twelve Thousand Five Hundred (12,500) share of said stock, which are delivered to L. A. Ehlers, Jr. herewith by Doris Hart, and Twelve Thousand Five Hundred (12,500) shares of said stock shall be placed in escrow in the South Main State Bank, Houston, Harris County, Texas, for delivery to said L. A. Ehlers, Jr., of one-half of said shares (6,250) on or before six months from date hereof for the sum of Three Thousand One Hundred Twenty Five ($3,125.00) Dollars, and one-half of said shares (6,250) on or before nine months from date hereof for the sum of Three Thousand One Hundred Twenty Five ($3,125.00) Dollars. Six per cent interest shall apply to escrow amount.

"It is Expressly understood and agreed that the said Doris Hart represents and warrants that all of said shares that she had any interest in whatsoever shall be surrendered to L. A. Ehlers, Jr., under the terms of this agreement.

"It is Further agreed that the said L. A. Ehlers, Jr. shall have the right

to purchase said shares out of escrow, as hereinabove provided, or in the quantities and amounts desired by him at the rate of Fifty (50¢) Cents per shares, Except, that in any event all of said shares shall be purchased from the escrow account and paid for within the six month and nine month periods, as above set out.

"It is Expressly agreed by and between the parties hereto, that in no event will a sale by Doris Hart to L. A. Ehlers, Jr., of the above-mentioned shares of Common Stock be considered a sale by either of the Parties, until the Stock Certificates are delivered to L. A. Ehlers, Jr. and paid for in full by him.

"Executed in Triplicate Original this 7th day of January, 1956.

"/s/   Doris Hart
"Doris Hart
"/s/   L. A. Ehlers, Jr.
"L. A. Ehlers, Jr."

The statement of facts prepared by the able trial court recites that after the foregoing contract was entered into, appellant and appellee agreed to substitute the First State Bank of Yoakum, Texas, as escrow agent because the South Main State Bank of Houston named in the original contract required that a bond be executed, and "the shares of stock," which we understand to be the certificates therefor, covered by the contract and escrow agreement, were given to the appellee by the appellant to be placed in escrow in the First State Bank of Yoakum. The escrow agreement which was dated February 27, 1956, appointing the Yoakum bank, read as follows:

"The State of Texas ⎱ "Know All Men By
"County of Dewitt ⎰   These Presents:

"That a written agreement, of date January 7, 1956, by and between Doris Hart and L. A. Ehlers, Jr., in his own right and as Trustee for others, is hereby amended as follows:

"Under and by virtue of said agreement twelve thousand five hundred (12,500) shares of Inter-American Development Corporation stock are now in the custody of First State Bank, Yoakum, Texas.

"Said First State Bank, Yoakum, Texas, is hereby substituted for South Main State Bank, Houston, Harris County, Texas, as escrow agent.

"Whereas, in said first mentioned agreement, the following paragraph appears:

" 'It is Further agreed that the said L. A. Ehlers, Jr. shall have the right to purchase said shares out of escrow, as herein above provided, or in the quantities and amounts desired by him at the rate of Fifty (50) Cents per shares, Except, that in any event all of said shares shall be purchased from the escrow account and paid for within the six month and nine month periods, as above set out.'

"It is hereby specially agreed that in the event the said L. A. Ehlers, Jr. shall not purchase all of said stock within the six and nine month periods as set out in said original agreement, Said First State Bank, Yoakum, Texas, shall be relieved of all responsibility concerning all shares of said stock not so purchased, by the return of all such stock not so purchased to the said Doris Hart.

"Except as altered by this amendment, said original above mentioned contract remains in full force and effect.

"Witness our Hands to three identical original copies this the 27 day of February, A.D. 1956.

"/s/   Doris Hart
"(Doris Hart)
"/s/   L. A. Ehlers, Jr.
"(L. A. Ehlers, Jr.)"

. Appellee takes the position that under the terms of paragraphs seven and eight of the contract dated January 7, 1956, he was accorded the right to purchase stock out of the escrow account during the six and nine month periods in such amounts he desired and that in no event was a sale of the stock to be considered a sale until the stock certificates were paid for and delivered to him. To bolster this contention he singles out the fifth paragraph of the escrow agreement which concerns only the responsibility of the Yoakum bank as the escrow agent and on this hypothesis seeks to demonstrate that no sale of the 12,500 shares placed in escrow was made and thus concludes that in the absence of a sale of any part of the stock, appellant is not entitled to a recovery. In support thereof he cites Smith v. Texas & N. O. Railroad Co., Tex.Civ.App., 105 S.W. 528. The sole question there involved was whether or not title to certain personal property had passed under an option agreement at the time a mortgage was placed on the property by the owner. It was held that since the option had not been exercised at that time, the mortgage lien was valid and could be foreclosed, thus precluding the holder of the option to claim title to the property against the purchaser at the foreclosure sale. Patently, this case does not touch the questions involved here.

Appellee's approach wholly fails to take into account any obligation on appellee's part to purchase the stock placed in escrow as fixed by the terms of the contract and overlooks appellant's contention that the contract was a bilateral agreement to sell and to purchase which, so she contends, was breached by appellee's failure to pay for the stock under the terms of the contract.

■ As said in Cole v. Haynes, 216 Miss. 485, 62 So.2d 779, 780, 33 A.L.R.2d 1378, by the Mississippi Supreme Court, "Whether the nature of a contract is an option or a bilateral obligation to purchase is to be determined not by the name which

parties have given it, but by the nature of the obligations which it imposes."

And similarly in Northside Lumber & Bldg. Company v. Neal, Tex.Civ.App., 23 S.W.2d 858, 859, it was said:

"We are of the opinion that the contention that the written contract entered into between the appellant company and Leach was only an option must be overruled. The contract in express terms was not unilateral, but bilateral. By it the appellant company, in express terms and plain words, agreed to sell, and Leach in terms equally as plain agreed to buy."

■ Both parties agree that each of the written agreements is unambiguous and that the rules for construing contracts as set forth in Citizens National Bank in Abilene v. Texas & P. Railroad Co., 136 Tex. 333, 150 S.W.2d 1003, and Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, are applicable. In the latter case, 243 S.W.2d at page 157, the Court said:

"In the interpretation of contracts whether they be ambiguous in the sense that that term is here defined or simply contain language of doubtful meaning, the primary concern of the courts is to ascertain and to give effect to the true intention of the parties. To achieve this object the courts will examine and consider the entire writing, seeking as best they can to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless."

■ As stated above, one of the basic rules is that in construing an instrument it must be considered in its entirety. Since the contract was executed almost two months before the escrow agreement, we must first construe the former instrument standing alone. Turning to a consideration of its provisions in the general purpose

clauses the appellant in the second paragraph clearly declared her desire "to sell *all* of the shares" owned by her in the company and appellee in the third paragraph by equally emphatic terms expressed his desire "to purchase all of said shares held by" her "in her own name or in the name of others or held beneficially by her for her or any other persons." Immediately following in the fourth paragraph, the consideration moving to each party is set forth as follows:

> "That, for and in consideration of the sum of Fifty-only (50¢) Cents per share, and the further consideration that all shares held by Doris Hart, or owned by her in any manner whatsoever, shall be included in the sale herewith of said above-named shares to L. A. Ehlers, Jr., by Doris Hart."

This was no more the declaration of the appellant than it was that of the appellee. It was their mutual declaration that the consideration for the sale of the stock was fifty cents per share "and the further consideration" that all stock held or owned by appellant *"shall be included in the sale."* (Emphasis ours.) The quantity was definitely tied to the price.

The fifth paragraph, setting forth the manner of payment for the stock is thoroughly consistent with foregoing language. The terms include payment for the entire 25,000 shares owned by her, leaving no suggestion that any amount less than the whole is within the contemplation of the parties. It recites the payment of $6,250 in cash for 12,500 shares delivered that day and for the placing of the remaining 12,500 shares in escrow, one-half to be delivered to appellee on or before six months for $3,125 and the other half to be delivered to appellee on or before nine months for $3,125. The last sentence of this paragraph provides: "Six percent interest shall apply to escrow amount." This provision strengthens the interpretation that the instrument is a contract and not an option. Crowe v. Gary State Bank, 7 Cir., 123 F.

2d 513. One does not ordinarily pay interest on an amount of money that he is not obligated to pay.

By paragraph six appellant "represents" and warrants that all shares that she has any interest in whatsoever shall be surrendered to appellee "under the terms of this agreement," which further emphasizes the fact that all of her stock was the subject of the contract.

Passing to paragraph seven, appellee is accorded the "right to purchase said shares out of escrow, as hereinabove provided, or in quantities and amounts desired by him at the rate of fifty cents per shares, * * * *Except,* however, that *in any event* all of said shares *shall be purchased and paid for* within the six month and nine month periods, as above set out." In this and the next paragraph are the provisions upon which appellee relies in contending that he was accorded only an option. It is noteworthy that appellee in his entire argument pretermits any discussion of the last clause of the seventh paragraph quoted above beginning with the word "Except" which was capitalized in the contract. This clause, however, is of cardinal significance because it definitely ties into this paragraph appellee's obligation to pay for the stock according to the terms of the fifth paragraph, and also his obligation to purchase *all* of appellant's stock as clearly expressed in paragraphs two, three, four and six.

The purpose and intent of paragraph seven, when read as a whole, is clear. It can be given only one construction and that is, appellee was afforded the privilege to purchase stock from that placed in escrow in amounts less than the whole blocks of 6,250 shares each during the six and nine month periods, upon his paying fifty cents per share therefor without in anywise releasing him from his obligation to purchase all of the 12,500 shares within the times specified in paragraph five.

The eighth paragraph provided a means for determining the time when each sale of

stock should be considered as having been made by stating that a sale would not be considered as having been made until appellee had paid in full therefor and the certificates delivered to appellee. This provision in no wise militates against the construction that he was obligated to purchase all of appellant's stock. The purpose of this clause is quite apparent. As heretofore noted, the last sentence in the fifth paragraph provides for the payment of six percent interest on the escrow amount. The exact date of the consummation of each sale of the stock was therefore important to both parties in computing the interest. It is thoroughly consistent with the terms of the whole contract and under no construction can it be said to qualify appellee's obligation to purchase the whole 12,500 shares.

Although the instrument construed as a whole is so clearly a contract as to warrant no further discussion or citation of authority, we will refer to the case of Obery v. Lander, 179 Mass. 125, 60 N.E. 378, because of the particular facts involved. There the plaintiff by a written instrument convenanted to sell to the defendant on demand 200 shares of the stock of a certain corporation and at once to indorse and deliver same to one Bisbee to be held by him in escrow, and to be delivered to the defendant, on payment of $1,000 within 15 days, 40 shares; on payment of $2,000 within 30 days thereafter 80 shares; and on payment of $2,000 within 30 days after the second payment, the remainder of the shares. It was stipulated that "This option expires * .* * if not accepted within fifteen days." The stock was endorsed and delivered to Bisbee at once. Exception was taken to the trial court's failure to rule that there was no evidence that the defendant had agreed to purchase the stock. It was shown that the defendant paid the first $1,000 and received the installment of stock therefor but refused to make the other payments, contending the agreement was an option.

Chief Justice Oliver Wendell Holmes, speaking for the Court, in part said:

"As to the evidence of the defendant's acceptance of the offer contained in the plaintiff's convenant, it would seem to be enough that the defendant paid the first thousand dollars and received the stock for it. The defendant argues, to be sure, that this was not an acceptance of the whole offer, on the ground that the offer was of three several sales, and also that the requirement that the option should be accepted within fifteen days shows that acceptance and the first payment were different things. We think it so plain that there was but one offer of the whole lot of two hundred shares, although to be paid for and delivered in parcels, that we shall spend no argument upon the matter."

Appellee contends, however, that construing the contract of January 7, 1956, with the agreement dated February 27, 1956, wherein the First State Bank of Yoakum was substituted as the escrow agent in lieu of the South Main State Bank, he was accorded only an option to purchase the stock. If this is true, then it is by virtue of some change that it wrought in the contractual terms of the agreement of January 7, 1956, whereby appellee was no longer obligated to purchase all of the 12,500 shares placed in escrow but was accorded only an option to purchase the stock out of escrow.

In our opinion this position is untenable. It is apparent from the terms of the escrow agreement that this instrument was executed for two and only two purposes: (1) to substitute the First State Bank of Yoakum as the escrow agent, and (2) to absolve the bank as the escrow agent from all responsibility to appellant in the event that appellee failed to purchase all of the stock out of the escrow account within the time specified under the terms of the contract of January 7, other than to return such stock to appellant. Any other construction

is precluded by the last paragraph of this instrument, which reads: "Except as altered by this amendment, said original above mentioned contract remains in full force and effect." This provision has been completely overlooked in appellee's concept of the instruments.

The law is well settled in this state that where a purchaser signs a contract of sale, it is not essential to his becoming bound thereby that it expressly obligates him to buy and pay therefor. His agreement to do so is clearly implied. Adams v. Brown, Tex.Civ.App., 25 S.W.2d 879; Howell v. Rosser, Tex.Civ.App., 32 S.W. 2d 380. A like implication applies to the seller where the purchaser agrees to purchase. Thomas-Huycke-Martin Co. v. T. M. Gray & Sons, 94 Ark. 9, 125 S.W. 659.

Moreover, the fact that both parties signed the instruments, while not conclusive, tends to show that they contemplated a contract of sale rather than an option. Rafael Gutierrez del Arroyo v. Graham, 227 U.S. 181, 33 S.Ct. 248, 57 L.Ed. 472; Slaydon & Co. v. Palmo, 53 Tex.Civ.App. 227, 117 S.W. 1054.

Moreover, by no reasonable construction can it be deduced from the terminology of these instruments that appellant intended that her stock was to be held in escrow under the terms of the contract and appellee was to be released from his obligation to purchase it. This construction would be in derogation of the last provision of the escrow agreement wherein it was stipulated that, "Except as altered by this agreement, said original above mentioned contract remains in full force and effect."

Whether the contract is construed alone or with the escrow agreement, in our opinion, the same construction is compelled that the parties by these instruments entered into an agreement to sell and purchase and not an option.

Appellant's suit is based upon appellee's breach of his contract to pay for the 12,500

shares which had been placed in escrow, and which had been returned to her by the Yoakum bank. She alleged a delivery of these shares and sought a recovery of the contract price. The Statement of Facts as settled by the trial court recites:

"* * * that the shares of stock covered by the contract and escrow agreement were given to the Defendant (appellee) by Plaintiff (appellant) to be placed in escrow in the First State Bank of Yoakum, * * * and at the time of the deposit of the shares of stock with the First State Bank of Yoakum, Texas, at the suggestion and request of Clyde Austin, *the stock was placed in the name of Louis Ehlers,* trustee, in order to save transfer taxes. * * * Thereafter, the Yoakum bank, on the 26th day of October, 1956, by registered mail returned *these shares of stock placed in escrow with said bank* to Plaintiff (appellant), notifying the Plaintiff (appellant) that the bank had not been advised of any further purchases by the Defendant (appellee)." (Emphasis ours.)

It is thus evident that the stock certificate representing these shares stands in appellee's name and that appellant at most held a bare certificate wherein appellee's name appeared as the owner.

In the court's Statement of Facts it is also recited that when the contract was entered into the appellee was acting in his own right and as trustee for W. R. Flocks and Walter Ehlers and that the shares of stock were in the name of George Hart, Trustee. It also states that appellee was president of the corporation, W. R. Flocks was its executive vice president and Walter Ehlers its chairman of the board, and that Doris Hart held no official position other than a stockholder.

Under the terms of Article 1358–1, Vernon's Ann.Civ.St., which is the first provision of our Uniform Stock Transfer Act, it is provided that title to certificates and to the shares of stock represented thereby can

only be transferred either by delivery of the certificate duly indorsed by the person appearing by the certificate to be the owner or by delivery of the certificate accompanied by a written assignment or a power of attorney signed by the person appearing by the certificate to be the owner thereof. It is further provided that the indorsement, assignment or power of attorney may be either in blank or to a specified person.

It must be assumed, therefore, that before the issuance of the stock certificates in appellee's name the law was complied with. Too, it is no rank presumption to say that the transfer to appellee was duly registered on the books of the corporation.

In art. 1358-3, V.A.T.S., of the same Act it is provided that nothing in the Act shall be construed as forbidding a corporation: "(a) to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner * * *"

It thus appears that by having the title to the stock certificate for the 12,500 shares put in his name appellee has placed himself in the position of enjoying the rights and privileges of the owner of these shares and he is liable to appellant for the contract price. Boyd v. Keystone Driller Co., Tex. Civ.App., 6 S.W.2d 221, writ ref. This we think constitutes a sufficient delivery of the stock to entitle appellant to a recovery of the contract price of $6,250 together with six percent interest from January 7, 1956.

Appellant's point is, therefore, sustained. It follows, that in our opinion the trial court erred in his findings and conclusions heretofore numbered one, three, four, five and six, and in rendering judgment for the appellee and, therefore, the trial court's judgment should be reversed.

We have carefully considered what further disposition this Court should make of this case. We are inclined to the view that the judgment of the trial court should not only be reversed but also should be rendered for appellant, because the statement of facts goes no further than to show that the stock certificate which was returned to appellant by the escrow agent was in appellee's name. In this state of the record it is now worthless to appellant and she is entitled to recover the contract price. Art. 1358-1, V.A.T.S.; Boyd v. Keystone Driller Co., supra. However, it is possible that the stock could have been indorsed by appellee. According to the statement of facts appellee failed to show it. If it had been so proven the burden would then have been placed upon appellant to tender the stock certificate upon trial to appellee in view of the provisions of art. 1358-8, V.A.T.S., concerning the negotiable aspects of stock certificates, or to account for her inability to do so or to prove that the stock had no value.

By reason of the necessity for the trial court's settling the statement of facts, it appears that the evidence was not taken by a court reporter. While as a whole the statement is admirably comprehensive on the cardinal facts in issue, these are details which could have been easily overlooked. But be that as it may, we believe that this cause should be remanded, for a new trial, in order that these facts may be developed.

Reversed and remanded.